945 So.2d 1160 (2006)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Margaret ROACH, et al., Respondents.
No. SC04-2313.
Supreme Court of Florida.
December 14, 2006.
*1161 Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami, FL and Thomas F. Neal and Stephen J. Jacobs of deBeaubien, Knight, Simmons, Mantzaris and Neal, LLP, Orlando, FL, for Petitioner.
Joel D. Eaton of Podhurst Orseck, P.A., Miami, FL and Weldon Earl Brennan of Wagner, Vaughan and McLaughlin, P.A., Tampa, FL, for Respondent.
Charles W. Hall and Mark D. Tinker of Fowler, White, Boggs and Banker, P.A., St. Petersburg, FL, for Amicus Curiae.
CANTERO, J.
This case requires us to decide which state's law applies when an automobile insurance contract is executed in another state, where the insureds permanently reside, but the insureds spend a substantial amount of time in Florida and the accident occurs here. In Roach v. State Farm Mutual Automobile Insurance Co., 892 So.2d 1107, 1112 (Fla. 2d DCA 2004), the district court of appeal held that Florida's public policy prohibited application of the lex loci contractus rule, which would apply the law of the state where the contract was executed. Instead, the court invalidated an exclusion contained in the policy that, although permitted in the state where the policy was executed, is not permissible under Florida law. The court then certified *1162 a question of great public importance.[1] We accepted jurisdiction. See art. V, § 3(b)(4), Fla.Const. To clarify the issue presented, we rephrase the question as follows:
WHERE RESIDENTS OF ANOTHER STATE WHO RESIDE IN FLORIDA FOR SEVERAL MONTHS OF THE YEAR EXECUTE AN INSURANCE CONTRACT IN THAT STATE, MAY THEY INVOKE FLORIDA'S PUBLIC POLICY EXCEPTION TO THE RULE OF LEX LOCI CONTRACTUS TO INVALIDATE AN EXCLUSIONARY CLAUSE IN THE POLICY?
As explained below, we answer the question "no" because the public policy exception to the lex loci rule may only be invoked to protect permanent Florida residents. We quash the district court's decision, which unduly expanded the exception to protect temporary residents.
We begin our opinion by examining the pertinent facts of the case. We then discuss the governing choice-of-law rule and the factors used in determining when the exception applies. Finally, we explain why the exception does not apply in this case.

I. THE FACTS OF THE CASE
The insureds, Ivan and Betty Hodges, lived in their homesteaded residence in Indiana, where they purchased from their local State Farm agent an automobile policy covering their cars. In 1993, the couple purchased a second home in Lake Wales, Florida, and began spending several months there each year, from late November through April. The Roaches, the respondents here, were winter neighbors of the Hodges in Florida. On January 26, 2001, they were passengers in the Hodges' car when it crashed with another car, killing Mrs. Hodges. The Roaches sued Mr. Hodges and the other car's driver. They later settled the personal injury liability claims with Mr. Hodges and with the other driver for their respective policy limits. The Roaches, however, sought underinsured motorist benefits under Mr. Hodges's policy, and so the lawsuit continued against State Farm.
The trial court granted State Farm's motion for summary judgment based on the terms of the policy and Florida's lex loci contractus rule of comity. That rule provides that the law of the place where the contract was executed governs the insurance contract.
On review, the Second District Court of Appeal acknowledged that, under the lex loci rule, Indiana law would apply to the Indiana automobile insurance contract. The court invoked the public policy exception, however, to nullify the policy term that would have prohibited recovery on the underinsured benefits claim and thus apply Florida law allowing recovery. Id. at 1112.[2]
*1163 The Second District held that the exception applies Florida law to insurance contracts when Florida has a "significant connection to the insurance coverage and when the insurance company has reasonable notice that the persons and risks covered by the insurance policy are centered in Florida." Id. at 1110 (footnote omitted). The court concluded that the Roaches could invoke the public policy exception based on "Florida's connection to the [Hodges'] insurance coverage." Id. at 1111. Examining this connection, the district court described the Hodges as winter residents or "snow birds," which the court defined as "those who spend substantially less time in Florida than year-round residents but who reside in our state with a significant degree of permanence." Id. at 1111, 1108. Based on the Hodges' ownership of a Florida home, their residence here for "approximately five and one-half months every year" since 1993, and their garaging one of their cars here at the time of the accident, the court found the Hodges had "established a significant degree of permanency" in Florida. Id. at 1112. The court remanded the case for consideration of disputed issues of fact, such as whether the insurer had "reasonable notice of Florida's connection" to the Hodges' vehicle. Id. at 1111-13. The court also certified the question we address here. Id. at 1113.

II. LEX LOCI CONTRACTUS AND THE PUBLIC POLICY EXCEPTION
Before we answer the certified question, we must first review the rule of lex loci contractus, the parameters of its public policy exception, and how the exception has been applied.

A. The Rule of Lex Loci Contractus
For reasons we have previously explained, we apply different choice of law rules to different areas of the law. For example, with respect to torts and statutes of limitation, we have abandoned the rule that the applicable substantive law is the law of the state where the injury occurredi.e., lex loci delictiin favor of a flexible test to determine which state has the most significant relationships to the cause of action. See Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980) ("[W]e now adopt the `significant relationships test' as set forth in the Restatement (Second) of Conflict of Laws §§ 145-146 (1971)."); Bates v. Cook, Inc., 509 So.2d 1112, 1114-15 (Fla.1987) ("We are now convinced that just as in the case of other issues of substantive law, the significant relationships test should be used to decide conflicts of law questions concerning the statute of limitations.").
In contrast, in determining which state's law applies to contracts, we have long adhered to the rule of lex loci contractus. That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. Sturiano v. Brooks, 523 So.2d 1126, 1129 (Fla.1988). In Sturiano, we consideredand rejectedthe significant relationships test. Id. at 1128-29. In that case, we answered a certified question asking whether the lex loci rule governed the "rights and liabilities of the parties in determining the applicable law on an issue of insurance coverage." Id. We discussed *1164 the significant relationships test, which requires consideration of various contacts between the contract and the states involvedsuch as the place of contracting and the place of performanceand weighing them to determine the state with the "most significant relationship to the transaction and the parties." Id. at 1129 (quoting Restatement (Second) of Conflict of Laws § 188 (1971)).[3] We acknowledged that "lex loci contractus is an inflexible rule," but concluded that "this inflexibility is necessary to ensure stability in contract arrangements." Id. We reasoned that "[w]hen parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary." Id. We concluded that to abandon this principle and permit a party to change or modify contract terms by moving to another state would unnecessarily disrupt the stability of contracts. Id. We explained the purpose behind the rule as follows:
In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement. The parties to this contract did not bargain for Florida or any other state's laws to control. We must presume that the parties did bargain for, or at least expected, New York law to apply.
Id. at 1130; see also Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 (Fla.1988) ("[T]he lex loci contractus rule determines the choice of law for interpretation of provisions of uninsured motorists clauses in automobile insurance policies just as it applies to other issues of automobile insurance coverage."). We have never retreated from our adherence to this rule in determining which state's law applies in interpreting contracts.

B. The Public Policy Exception
Florida courts have carved out a narrow exception to the lex loci rule. We long ago held "that the rules of comity may not be departed from, unless in certain cases for the purpose of necessary protection of our own citizens, or of enforcing some paramount rule of public policy." Herron v. Passailaigue, 92 Fla. 818, 110 So. 539, 542 (1926) (emphasis added); see also In re Estate of Nicole Santos, 648 So.2d 277, 281 (Fla. 4th DCA 1995) ("We agree that Florida courts may depart from the rule of comity where necessary to protect its citizens or to enforce some paramount *1165 rules of public policy. However, it has also been held that just because the law differs between Florida and another jurisdiction does not in itself bar application of foreign law."); Lincoln Nat'l Health & Cas. Ins. Co. v. Mitsubishi Motor Sales of Am., Inc., 666 So.2d 159, 161 (Fla. 5th DCA 1995) ("Under these choice of law rules, the laws of the place in which a contract was made govern matters concerning its execution, interpretation and validity, unless public policy requires the assertion of Florida's paramount interest in protecting its citizens from inequitable insurance contracts."); Aetna Cas. & Sur. Co. v. Enright, 258 So.2d 472, 475 (Fla.3d DCA 1972) ("[A] court may not depart from the rules of comity, except in certain cases, for the purpose of protection of Florida citizens or for the purpose of enforcing some paramount rule of public policy."). This has become known as the public policy exception. It requires both a Florida citizen in need of protection and a paramount Florida public policy.
In the context of insurance contracts, at least, one more requirement also must be met: the insurer must be on reasonable notice that the insured is a Florida citizen. An insurer may only issue policies in a state in which it is licensed and in accordance with that state's law. The requirement of notice informs the insurer of which state's law will govern the policy. Accordingly, in applying the exception, courts consider whether the insured notified the insurer of a permanent change of residence and whether the insured risk is or will be primarily located in Florida. See New Jersey Mfrs. Ins. Co. v. Woodward, 456 So.2d 552 (Fla.3d DCA 1984) (holding that Florida law did not apply to a New Jersey policy because the insurer had notice only of the insured's changed mailing address, not that the insured changed its permanent address to Florida and principally garaged vehicles in Florida); State Farm Mut. Auto. Ins. Co. v. Davella, 450 So.2d 1202, 1204 (Fla. 3d DCA 1984) (holding Florida law inapplicable to an out-of-state policy where the insured specifically rejected a Florida policy and informed the insurer that the Florida residence was temporary). Such notice allows an insurer to decline to issue a policy, to withdraw from one, orif it is licensed in Floridato issue a policy in Florida and charge the appropriate premium. See Michael S. Finch, Choice-of-Law Problems in Florida Courts: A Retrospective on the Restatement (Second), 24 Stetson L.Rev. 653, 716 (1995) ("[T]he insurer is entitled to notice of the relocation so that it can renegotiate applicable premiums or, if it so chooses, withdraw from the insurance relationship."); cf. Tenn. Farmers Mut. Ins. Co. v. Meador, 467 So.2d 471, 472 (Fla. 5th DCA 1985) (noting that upon receiving notice of the insured's move to a state where the insurer did not operate, the insurer sent notice of its intent not to renew the policy).

C. This Court's Prior Applications of the Rule
We have had three prior opportunities to interpret the lex loci contractus rule and its public policy exception as it applies to insurance policies. Fourteen years before our decision in Sturiano, we applied the public policy exception in Gillen v. United Services Automobile Ass'n, 300 So.2d 3 (1974). In that case, as in this one, we considered conflicting automobile insurance coverage. The insureds, while residents of New Hampshire, obtained from a New Hampshire insurer separate automobile insurance policies on their two cars. They later moved to Florida and notified the insurer of the move. In Florida, they sold one car and bought another. The out-of-state insurer issued a new policy for the car in Florida. The insurer, however, did *1166 not alter the existing policy on the insureds' other car. When the insureds were later involved in an accident in Florida, they sought recovery under both policies. The insurer paid under the Florida-issued policy, but refused to pay under the other policy issued in New Hampshire, citing its "other insurance" clause. Id. at 4-5.
Despite the insurer's issuance of the policy in New Hampshire, we applied Florida law based on three factors. First, we previously had held that "other insurance" clauses violated Florida public policy. See Sellers v. U.S. Fid. & Guar. Co., 185 So.2d 689 (Fla.1966).[4] Second, the insureds moved permanently from New Hampshire. As we noted, they "were in the process of establishing themselves as permanent residents of this State, and as such are proper subjects of this Court's protection from injustice or injury." Gillen, 300 So.2d at 6 (emphasis added). Third, the insureds notified the insurer of the move to Florida, and the insurer issued a policy here. We emphasized that "[t]his c[ould] be seen as an acknowledgment of domiciliary change and would indicate to [the insurer] that coverage under both policies would be shifted to Florida." Id. Accordingly, we concluded: "Here, the substantial interest of Florida in protecting its citizens from the use of `other insurance' clauses rises to a level above New Hampshire's interest in permitting them. Public policy requires this Court to assert Florida's paramount interest in protecting its own from inequitable insurance arrangements." Id. at 7.
Several years after Gillen, we decided Sturiano. In that case, we not only rejected the most-significant-relationships test, but applied the lex loci rule to facts essentially identical to those here. The insureds were residents of New York who purchased an automobile insurance policy in New York and who each year spent several winter months in Florida. 523 So.2d at 1129. We held that "[u]nder the doctrine of lex loci contractus, it is clear that New York law must apply." Id. at 1129.
Finally, ten years after Sturiano, we once again applied the lex loci rule to answer a question certified by the Eleventh Circuit Court of Appeals. In Strochak v. Federal Insurance Co., 717 So.2d 453 (Fla.1998), the facts were similar to those in Gillen. The insurer had issued a "Masterpiece" policy in 1985 covering a couple's cars and two residencesthe primary one in New Jersey and one in Florida. After the husband's death in 1987, his widow bought one of the cars from their business, and in 1989 she moved to Florida. She registered the car in Florida, listing her Florida residence, regularly garaged the car at that address, and obtained a Florida-issued and-delivered policy covering it. In 1990, the insurer issued a new "Masterpiece" policy, adding the Florida car. The policy had a different number than the one issued to her late husband, listed a different named insured *1167 Mrs. Strochakand provided different coverage. Moreover, the policy "contained Florida policy terms and Florida signatures" and the insurer issued and delivered the policy to Mrs. Strochak at her Florida residence. Id. at 455. In 1992, Mrs. Strochak was involved in an accident in Florida. The insurer contended that Mr. Strochak waived excess uninsured motorists benefits back in 1985 (under the prior policy), and that New Jersey law governed the contract. We concluded, however,
that the 1990 Masterpiece policy that provided excess liability coverage for the 1984 Lincoln was not the same policy that was issued and delivered in New Jersey in 1985. The 1990 policy was issued and delivered in Florida, renewed in June 1992, and was in effect at the time of the accident. Under these circumstances, we must presume that the parties to this contract bargained for, or at least expected, Florida law to apply.

Id. (footnote omitted) (emphasis added). Accordingly, we held that the requirement of section 627.727(2), Florida Statutes (Supp.1990), that automobile insurance policies "delivered or issued for delivery in this state" contain uninsured motorist coverage, unless expressly waived by the insured, applied to the 1990 policy. In answer to the federal court's certified question, we held the insurer was required under Florida law to offer excess uninsured motorist benefits in 1990, when it first delivered the new policy covering the car in Florida. 717 So.2d at 455-56. Because Strochak involved the application of a Florida statute to a Florida-issued contract covering a Florida-based risk, the case did not involve the policy exception of Gillen, but a straightforward application of the lex loci rule of Sturiano.
As these cases demonstrate, the public policy exception is intended to be narrow. It displaces the lex loci rule only when the insurer has notice that the insured is not merely a temporary visitor, but a permanent Florida resident. We now turn to the district court's decision applying the public policy exception to this case.

III. THE PENDING CASE AND THE CERTIFIED QUESTION
The district court in this case misstated the test for applying the public policy exception. By using a test we have specifically rejected, the court broadened the public policy exception far beyond its narrow purpose.
The district court erroneously stated that "[t]he public policy exception [to the lex loci contractus rule] is properly invoked when Florida bears a significant connection to the insurance coverage." 892 So.2d at 1110 (footnote omitted) (emphasis added). Applying this test to the named insureds, the court considered various factors, such as the length of their stay in their Florida home every year and that their car was garaged in Florida at the time of the accident. The court concluded that the insureds had a "significant degree of permanency" and that their "continuing permanent contacts with Indiana do not defeat the permanence of their Florida winter residency." Id. at 1112. The court held that "when there is a significant degree of permanency in the insured's sojourn in Florida, then the insured may invoke Florida's public policy" to invalidate an exclusionary clause in an out-of-state insurance contract "provided that the insurance company is on reasonable notice that the risk of the policy is centered in Florida at the time of the accident." Id.
The district court did acknowledge our decision in Sturiano rejecting the mostsignificant-relationships test. Id. at 1110-11 & n. 3. In reaching its holding, however, *1168 the court nevertheless relied on our discussion of that test in Gillen and the apparent application of that test in several district court cases decided before Sturiano. See Safeco Ins. Co. of Am. v. Ware, 424 So.2d 907, 908 (Fla. 4th DCA 1982) (affirming the trial court's determination that Florida "`ha[d] a significant relationship' to the insurance contract at issue"); Petrik v. N.H. Ins. Co., 379 So.2d 1287, 1290 (Fla. 1st DCA 1979) (noting that "[t]he State of Florida had significant contacts with the automobile liability policy which justified an interpretation of it under Florida law"); Johnson v. Auto-Owners Ins. Co., 289 So.2d 748, 749-50 (Fla. 1st DCA 1974) (finding that "Florida had ample contacts with the insured to apply the law of Florida"). Applying a "significant connection" test, the district court analyzed several facts to determine whether Florida bore a significant connection to the insurance coverage. Thus, the court essentially applied the most-significant-relationships test under another name. As a result, even though the Hodges were permanent residents of Indiana, the court focused on their extended but temporary winter stay in Florida and found it "significantly permanent." See Roach, 892 So.2d at 1112.
Our decisions in Gillen, Sturiano, and Strochak make clear both that this state applies the lex loci rule to conflict-of-law issues involving contracts, and that the public policy exception to that rule is narrow and does not apply unless it is necessary to protect Florida's own citizens. See Gillen, 300 So.2d at 7; Herron, 110 So. at 542. Gillen rested on the fact that the insureds in that case moved to Florida and that they indeed were "establishing themselves as permanent residents." 300 So.2d at 6-7. We emphasized that the insurer had acknowledged the insureds' change of domicile from New Hampshire to Florida and asserted our "substantial interest of Florida in protecting its citizens." Id. at 7. Thus, because the insureds were Florida residents and because they notified the insurer of their change of domicile, we determined it necessary to "assert Florida's paramount interest in protecting its own from inequitable insurance arrangements." Id. Our decision in Strochak, too, was based on the insured's permanent move to Florida and the insurer's issuance of the policy here.
In this case, the Hodges were permanent residents of Indiana with automobile insurance purchased in Indiana from a State Farm agent in Indiana. The difference between the facts in Gillen and Strochak, on the one hand, and those in Sturiano and this case, on the other, is that in Gillen and Strochak the insureds were permanent residents of Florida, and the insurer knew it. Cf. Reinish v. Clark, 765 So.2d 197, 208 (Fla. 1st DCA 2000) (holding that the Florida homestead exemption's limited application to a home constituting the "permanent residence" was not unconstitutional as to nonresidents and stating that "[i]rrespective of the state of residency of their owners, secondary residences do not trigger the same public policy concerns and are not entitled to the same protection as permanent Florida residences"). Because the insureds in this case were not permanent residents of Florida, the public policy exception to the lex loci rule does not apply.
We noted above that the public policy exception to the lex loci rule requires both the involvement of a Florida citizen in need of protection and the existence of a paramount Florida public policy. Our answer to the certified question, holding that the public policy exception applies only when permanent residents are involved, renders it unnecessary to consider whether the Indiana law regarding recovery of underinsurance claims, which conflicts with *1169 the corresponding Florida statute, violates a paramount public policy of Florida.

IV. CONCLUSION
The public policy exception to the lex loci contractus rule is narrow. It applies only when necessary to protect "our own citizens," Herron, 110 So. at 542, not visitors or even temporary residents, and then only when necessary to promote a paramount public policy of this state. Although Florida welcomes its many visitors, whether for short or extended stays, we cannot rewrite their out-of-state contracts. To do so would throw conflicts-of-law jurisprudence into disarray and destroy the stability in contractual arrangements that the lex loci rule is designed to ensure. We therefore answer the certified question in the negative and quash the decision below.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
PARIENTE, J., concurs with an opinion.
LEWIS, C.J., concurs in result only with an opinion.
PARIENTE, J., concurring.
If I were to write on a clean slate, I would apply the "significant relationship" test set forth in the Restatement (Second) of Conflict of Laws, section 188 (1971). I thus fully agree with Justice Grimes' concurrence in Sturiano v. Brooks, 523 So.2d 1126, 1130 (Fla.1988), in which Justice Overton joined. As Justice Grimes noted, the "rule of lex loci contractus has been roundly criticized as mechanistic and unworkable in practice." Id. (Grimes, J., concurring) (footnote omitted). Although not a bright line rule, the "significant relationship" test appears to me to produce the most equitable result.
Absent receding from Sturiano, I concur in the majority's decision, including its analysis distinguishing the other cases where we have applied Florida law to out-of-state automobile insurance contracts. I agree with the majority that the rule of lex loci contractus requires application of the law where the contract was entered. In my view, the majority also accurately explains that the exception to lex loci contractus is a narrow one.
I write separately to point out that the "significant connection" test utilized by the Second District Court of Appeal in this case is probably more expansive than the "significant relationship" test. Further, even assuming we were to apply the Restatement's "significant relationship" test, application of this test would not alter the Court's conclusion that Indiana law governing insurance contracts applies in this case.
The Second District relied on what it termed the "significant connection" test and stated that the "public policy exception is properly invoked when Florida bears a significant connection to the insurance coverage and when the insurance company has reasonable notice that the persons and risks covered by the insurance policy are centered in Florida." Roach v. State Farm Mut. Auto. Ins. Co., 892 So.2d 1107, 1110 (Fla. 2d DCA 2004) (footnote omitted). The Second District determined that this test is satisfied here, provided that State Farm was on reasonable notice that the risk of the insurance policy was centered in Florida. See id. at 1112. In making this determination, the Second District reasoned that the Hodges established a significant degree of permanency in Florida, and thus a significant connection to this state, because they owned a home in Florida, resided there for "approximately five and one-half months every year" since 1993, and were garaging *1170 one of their automobiles in Florida at the time of the accident. Id. Under the Second District's "significant connection" test, other factors such as the residency of the insured and the location where the insurance policy was issued are not considered in making a choice of law determination. In this regard, the "significant connection" test is much broader in application than the Restatement's "significant relationship" test, which contains several factors that must be considered in evaluating which state's laws apply.
The Restatement's test requires a court to consider the following factors in making a choice of law determination: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. See Restatement (Second) of Conflict of Laws § 188(2). The Restatement also provides that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue," id., but that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied," except in certain circumstances not relevant here. Restatement (Second) of Conflict of Laws § 188(3).
In this case, application of these factors weighs in favor of Indiana law governing the Hodges' insurance contract. Here, the insurance policy was contracted, negotiated, and subsequently issued to the Hodges in Indiana through State Farm's Indiana insurance agent. In addition, the Hodges are permanent residents of Indiana. Thus, three of the five factors in the "significant relationship" test suggest that Indiana law is appropriate. The two remaining factors, place of performance and location of the subject matter of the contract, do not alter this conclusion. Because an automobile insurance policy typically provides coverage for the automobile(s) listed in the policy regardless of the state in which an accident occurs, in most cases the place of performance cannot be determined with any certainty at the time of contracting. Therefore, this factor has little weight in the choice of law analysis. See Restatement (Second) of Conflict of Laws § 188(2) cmt. e (1971) ("On the other hand, the place of performance can bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue.").
Although the automobile at issue in this case was located in Florida at the time of the accident, which would weigh in favor of applying Florida law,[5] this fact is insufficient to support a conclusion that Florida law applies when it is considered together with the other factors. Accordingly, even under the Restatement's "significant relationship" test, Indiana law would apply to the Hodges' insurance policy.
Although I believe that the "significant relationship" test would better serve in most cases to produce a balanced result, with due regard to both the insured and insurer, under either this test or the rule of lex loci contractus, Indiana law applies. Accordingly, I concur.
LEWIS, C.J., concurring in result only.
I concur in result only based upon my view that the majority opinion applies the *1171 doctrine of lex loci contractus in Florida more rigidly than ever before and more rigidly than necessary to resolve the instant matter. The majority's opinion applying the doctrine of lex loci contractus will result in the law of other states controlling matters involving automobile insurance contracts when the contracting parties designed and intended such contracts to insure against risks located in Florida and to be governed by the laws of our State. In my view, the doctrine has not and should not be applied so rigidly in Florida as to provide an avenue for parties to circumvent the application of Florida law when a conflict arises under an automobile insurance contract simply by executing the insurance contract in another state when the subject matter of the contract and the risk being insured against is located in Florida.
In my view, when determining what jurisdiction's law should be applied to a controversy arising under an automobile insurance contract, we have consistently concluded that a court should consider not only the place where the contract is executed and delivered but also the location of the risk being insured against and the intentions of the parties to the automobile insurance contract to determine what law should be applied to controversies arising under the contract. See Strochak v. Fed. Ins. Co., 717 So.2d 453 (Fla.1998) (discussed in detail below); Sturiano v. Brooks, 523 So.2d 1126 (Fla.1988) (concluding that lex loci contractus required the application of New York law to an insurance contract executed in New York while also noting that the insureds did not notify the insurance company of their move to Florida each year for the winter months and that the insurance company had no way of knowing about that migration); Gillen v. United Servs. Auto. Ass'n, 300 So.2d 3, 6-7 (Fla.1974) (concluding that Florida law should apply to a controversy arising under an automobile insurance contract executed in New Hampshire notwithstanding the doctrine of lex loci contractus where the insureds notified the insurance company of their move from New Hampshire to Florida and were in the process of establishing themselves as permanent residents of Florida). My concern with the majority opinion is that it contracts the analysis previously endorsed by this Court by looking solely to where the contract was executed to determine what jurisdiction's law should be applied to controversies arising under the particular contract. Of particular concern to me is the outcome that would result when the majority opinion is applied to the actual holdings in our decision in Strochak v. Federal Insurance Co., 717 So.2d 453 (Fla. 1998), and the Second District Court of Appeal's decision in Decker v. Great American Insurance Co., 392 So.2d 965 (Fla. 2d DCA 1980). It is my view that these decisions were correctly decided. However, if the analysis endorsed by the majority opinion today were to be applied to these factual scenarios a different, and incorrect, result could attain.
In Strochak, a liability policy covering two residences, the primary residence being listed in New Jersey with the second residence listed in Florida, and three vehicles, none of which was listed as being principally garaged in Florida, was executed and delivered in New Jersey. See 717 So.2d at 454. Subsequently, the insured registered one of the vehicles in Florida and obtained a primary automobile insurance policy listing Delray Beach, Florida, as the insured's address. See id. However, the initial policy entered into in New Jersey was later renewed and the renewal policy was mailed to the insured's New Jersey address, and the vehicle at issue, which was now principally garaged in Florida, was added to the renewed master *1172 policy and listed as being garaged in Florida. See id. A dispute arose over uninsured motorist benefits after the above-mentioned vehicle was involved in an accident. See id. At trial, the federal district court assumed that Florida law applied and entered summary judgment in favor of the insurance company. See id. The federal court of appeals agreed but certified a question to this Court regarding section 627.727(2) of the Florida Statutes (Supp. 1990). See id. On appeal, the insurance company asserted that Florida law should not apply to the matter because the master policy under which the vehicle in question was insured was originally executed in New Jersey, and under the doctrine of lex loci contractus the law of the state where the contract was executed should apply. See id. at 454. This Court rejected the insurance company's assertion and held that Florida law should apply to the controversy. See id. at 455. In so holding, the Court concluded that a rigid interpretation of lex loci contractus should not be applied because the insurance company was aware of the insured's move and connection with Florida, the master policy in effect at the time the loss in question occurred contained Florida policy terms and Florida signatures and was mailed to the insured's Florida residence, and as a result it must be "presume[d] that the parties to the contract bargained for, or at least expected, Florida law to apply." Id. Although in my view this Court reached the correct result in Strochak, my concern with the majority's opinion is that under the rigid application of the doctrine of lex loci contractus applied by the majority, a contrary and incorrect outcome may result if the majority opinion were to be applied to the certified question of Strochak. The majority today actually adopts the rigid application advanced by the dissent in Strochak.
The majority provides an expansive discussion of the factual circumstances in Strochak as though no conflict of law issue existed, but does not address the specific holding which was produced by the certified question. This Court restated the question to be answered by mixing the concepts of both an existing policy executed in a foreign state with subsequent policy alterations issued and delivered in Florida as follows:
Whether an excess carrier has a duty to make available the uninsured motorists (UM) coverage required by section 627.727(2), Florida Statutes (Supp.1990), to an insured under an existing policy on vehicles which had never been registered or principally garaged in Florida when any vehicle, covered or subsequently added, first becomes registered or principally garaged in Florida and when the policy is delivered or issued for delivery in Florida.
Strochak, 717 So.2d at 454 (emphasis supplied). The "existing policy" referred to was clearly from a foreign state. This Court answered the restated question in the affirmative, which is the holding that we must consider. This Court concluded its analysis and reasoning in stating:
The duty to offer excess UM coverage was created in June 1990, when the excess motor vehicle liability policy was first delivered in Florida and included coverage for the 1984 Lincoln. The fact that this new coverage may have been added via a "worksheet" rather than an "application" is a distinction without a difference. FIC [the insurer] was aware at that point of the location of the risk and had a duty under the statute to offer Rita Strochak UM coverage in an amount equal to the liability limits of the 1990 Masterpiece excess policy.

Id. at 455-56 (emphasis supplied) (footnote omitted).
*1173 Similar to my concerns with regard to Strochak, application of the majority's decision to the Second District's opinion in Decker would result in an erroneous application of a foreign state's law to an automobile insurance contract that was clearly designed and intended to cover risks located in Florida and, therefore, subject to Florida law. In Decker, an Atlanta company, the Moore Group, hired Decker, a resident of Florida, as a traveling salesman for the state of Florida. See 392 So.2d at 966. Subsequent to hiring Decker, the Moore Group assigned an automobile to him for use in connection with company business in Florida. See id. The car was exclusively garaged in Florida. See id. Moore Group insured its entire automobile fleet with Great American Automobile Association, the contract of insurance being mailed from Ohio and delivered to Moore Group's place of business in Atlanta, Georgia. See id. at 967. After assuming coverage of Moore Group's autos, Great American mailed forty auto insurance cards to the Moore Group consisting of "ten for Florida, twenty for Georgia, and twenty all purpose cards."[6]Id. After being notified that Decker had been injured in an accident in a covered vehicle, Great American notified the Moore Group that it was necessary to elect the statutory minimum uninsured motorist coverage and informed the company of Florida's statutorily required minimums. See id. In a declaratory action to determine the rights of the parties under the insurance policy, the trial court determined that Florida law did not apply to the insurance policy because the policy was not delivered or issued in Florida. See id. at 966. On appeal the district court reversed, holding that Florida law did in fact apply to the action. See id. at 968. Noting the similarities between the facts before it and other cases where an insurance contract had been issued or delivered in another state, and where the insurance company was aware that the insurable risk was located in Florida, the district court held that Florida law governed the case. See id. at 969-70. Applying the analysis employed in the majority opinion in the instant matter to the facts of Decker could only result in a conclusion that Florida law should not be applied to the controversya result which, in my view, would be in error.
The above decisions make it clear that although an automobile insurance contract may be executed outside the state of Florida, it is entirely plausible that the contracting parties bargained for and intended that Florida law be applied to controversies arising under such contracts when the insurable risk was known to be located in Florida. Although I agree with the ultimate result of the majority opinion based upon the specific facts of the instant matter, I write separately to voice my concern of what appears to be the majority opinion's endorsement of an overly rigid application of the doctrine of lex loci contractus in Florida. In my view, the better analysis of what state's law should be applied to an action involving an automobile insurance contract must necessarily involve not only the place where the contract is executed and delivered, but also the location of the risk being insured against along with the intentions of the parties to the contract.
NOTES
[1] The district court certified the following question:

WHEN FLORIDA IS THE FORUM FOR AN ACTION TO OBTAIN UNDERINSURED MOTORIST BENEFITS UNDER AN INSURANCE CONTRACT THAT IS OTHERWISE GOVERNED BY THE LAW OF ANOTHER STATE, MAY AN INSURED INVOKE FLORIDA'S PUBLIC POLICY TO INVALIDATE AN EXCLUSIONARY CLAUSE PROHIBITING THE "STACKING" OF UNDERINSURED MOTORIST BENEFITS WHEN THERE IS A SIGNIFICANT DEGREE OF PERMANENCY IN THE INSURED'S SOJOURN IN FLORIDA AND THE INSURER IS ON REASONABLE NOTICE THAT THE RISK OF THE POLICY IS CENTERED IN FLORIDA AT THE TIME OF THE ACCIDENT THAT OCCURRED IN FLORIDA?
Id. at 1113. On review, however, the parties acknowledge that the district court's use of the insurance term "stacking" was inaccurate.
[2] Indiana and Florida define underinsurance differently. Compare Ind.Code § 27-7-5-4 (West 2003) with § 627.727(1), Fla. Stat. (1999). Further, Florida does not allow underinsurance coverage to be reduced by setoff against other coverage, while Indiana law does. Compare Ind.Code § 27-7-5-5 (2004) with § 627.727(1), Fla. Stat. (1999). Accordingly, compensation was available under Florida law that was not available under Indiana law and the terms of the policy.
[3] The Restatement requires the consideration of certain contacts as follows:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.
Restatement (Second) of Conflict of Laws § 188 (1971).
[4] We have never held, for purposes of applying the exception, that every out-of-state contractual provision that conflicts with Florida law violates paramount public policy. In fact, we have held that some conflicting laws do not violate our public policy. See Cont'l Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507, 509 (Fla.1981) (stating that "usury laws are not so distinctive a part of a forum's public policy that a court, for public policy reasons, will not look to another jurisdiction's law which is sufficiently connected with a contract and will uphold the contract," and that the Court did not think "the mere fact that there exists in Florida a usury statute which prohibits certain interest rates establishes a strong public policy against such conduct in this state where interstate loans are concerned"). As explained below, however, we need not decide whether the conflicting Indiana law violated Florida's public policy.
[5] See id. (stating that where the contract deals with a specific physical thing or affords protection against a localized risk, the "state where the thing or the risk is located will have a natural interest in transactions affecting it").
[6] Although it appears that the district court's math is incorrect, the mere fact that Florida cards were issued by the insurance provider is sufficient to demonstrate my point.