PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
*1303 Plaintiffs Dirk and Phyllis Pierce (the "Pierces"), Florida residents, sue Defendant Property and Casualty Insurance Company of Hartford ("Hartford"), a Connecticut Corporation, for breach of an insurance policy contract covering property located in Ellijay, Georgia. Currently before the Court is the Pierces's Motion for Determination of Choice of Law, wherein the Pierces ask the Court to apply the law of the State of Florida to this matter. (Doc. 27). In its response, Hartford argues that the laws of either Georgia or Connecticut should apply. (Doc. 28). Upon consideration and review, the Court holds that the laws of Connecticut govern the insurance conflict at issue in this case.
I. BACKGROUND
In early 2012, the Pierces purchased a vacation cabin located in Ellijay, Georgia (the "Property"). (Doc. 1, p. 2). On March 14, 2012, from their home in Florida, the Pierces telephoned Hartford to request a quote for homeowner's insurance on the Property. (Doc. 28, pp. 1-2). The call was transferred to Hartford sales associate, Tina Pranger ("Pranger"), who was a licensed underwriter for the State of Georgia but physically located in Connecticut at the time of the telephone call. (Id. at p. 2).
During the telephone call, Pranger provided the Pierces a quote for insuring the Property for one year. (Doc. 28, Ex. B. p. 35). The Pierces inquired "what do I have to do to bind that?" Pranger replied: "[T]he earliest we can set this up for you would be tomorrow to have the policy in effect, we just need to go through a few additional questions." (Id. ). The Pierces agreed to move forward with the additional questions, stating: "Well, go ahead and do it I guess, I need to get insurance on it." (Id. at p. 36).
After proceeding with the additional questioning, Pranger reviewed the insurance coverage available for the Property. (Id. at p. 43-45). Pranger asked the Pierces if they felt "comfortable with all those coverages?" (Id. at p. 44). The Pierces responded: "Yeah, that's fine, that's plenty." (Id. ).
Pranger then asked the Pierces how they wanted "to pay for the down payment today, with check, credit card, or debit card?" (Id. at p. 45). The Pierces agreed to provide a credit card for the down payment, with additional payments towards the premiums due at a later date. Pranger informed the Pierces that coverage on the Property would be in effect at 12:01 a.m. the following day, and that confirmation of the policy would be sent in the mail. (Id. at p. 49). Coverage indeed began on March 15, 2012, and was twice after renewed, once in 2013 and again in 2014.
On September 12, 2014, the Pierces reported a loss on the Property resulting from a fire that occurred on or about September 11, 2014. (Doc. 27, ¶ 12). In a letter dated April 20, 2015, Hartford denied the Pierces's fire damage claim, asserting that the fire was intentionally set. (Doc. 1, ¶ 25). On October 27, 2015, the Pierces initiated this suit, seeking damages for breach of the insurance contract.
On May 17, 2016, the Pierces filed a Motion for Determination of Choice of Law. (Doc. 27). According to the Pierces, the laws of the State of Florida apply. Hartford, on the other hand, argues that either the laws of Georgia or Connecticut apply.
II. DISCUSSION
In a diversity action, a federal court must apply the choice-of-law rules of the forum state. See, e.g. , *1304 Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C. , 592 Fed.Appx. 876, 881 (11th Cir. 2015). Thus, this Court must apply Florida's choice-of-law rules. "In Florida, the rights and obligations of the parties under an insurance policy are governed by contract law, because they arise out of an insurance contract." Lumbermens Mut. Cas. Co. v. August , 530 So.2d 293, 295 (Fla. 1988).
In contract cases, courts typically employ one of two tests for determining choice-of-law: the Restatement's "significant relationship" test or the rule of "lex loci contractus ." Although the Florida Supreme Court has adopted the "significant relationship" test in tort cases, Bishop v. Fla. Specialty Paint Co. , 389 So.2d 999, 1001 (Fla. 1980), it has never adopted the "significant relationship" test in contract cases, State Farm Mut. Auto. Ins. v. Roach , 945 So.2d 1160, 1163-64 (Fla. 2006).
In Sturiano v. Brooks , 523 So.2d 1126, 1129 (Fla. 1988), the Florida Supreme Court held that, in cases involving contracts for automobile insurance, the rule of lex loci contractus would apply to determine choice-of-law. Because the Florida Supreme Court limited it's holding in Sturiano to insurance contracts covering automobiles, the Eleventh Circuit determined in 1990 that the Florida Supreme Court would likely abandon the "antiquated" doctrine of lex loci contractus for insurance contracts concerning real property. Shapiro v. Associated Int'l Ins. , 899 F.2d 1116, 1119 (11th Cir. 1990). The Eleventh Circuit guessed that, in cases involving contracts for real property insurance, the Florida Supreme Court would apply "the local law of the state which the parties understood was to be the principal location of the risk." Id. at 1119.[1] Shapiro was followed by courts in the Eleventh Circuit for many years, unquestioned by the Florida Supreme Court.
In 2006, however, the Florida Supreme Court in Roach stated: "We have never retreated from our adherence to [the lex loci contractus ] rule in determining which state's law applies to interpreting contracts." Roach , 945 So.2d at 1164. Although Roach involved an automobile insurance contract, the Florida Supreme Court's discussion of the lex loci contractus rule was broad and not expressly limited to automobile insurance contracts.
After Roach was decided, the Eleventh Circuit was presented with a choice-of-law issue in a case involving an insurance contract executed in Massachusetts insuring construction projects in Florida. U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. , 550 F.3d 1031 (11th Cir. 2008). Rather than relying on its decision in Shapiro , the Eleventh Circuit concluded that the issue "present[ed] an unsettled question of Florida law" and, therefore, certified the question to the Florida Supreme Court. Id. at 1032. Certification of the question was later withdrawn when the parties stipulated to dismissal of the case. Since Roach , a number of district courts in the Eleventh Circuit have suggested that the Eleventh Circuit's "guess" in Shapiro may no longer be viable. See, e.g. , Liberty Mut. Ins. v. Festival Fun Parks, LLC , No. 12-62212-CIV, 2013 WL 4496511, at *4 (S.D. Fla. Aug. 22, 2013) (citing post- Roach cases applying lex loci contractus to real-property contract cases); Valiant Ins. v. Progressive Plumbing, Inc. , No. 5:06-cv-410-Oc-10GRJ, 2007 WL 2936241, at *3-4 (M. D. Fla. Oct. 9, 2007).
Based on the Florida Supreme Court's broad discussion of the lex loci contractus *1305 rule in Roach , and the subsequent district court precedent applying the rule to real-property contract cases, the Court finds that the lex loci contractus rule applies to the insurance contract in this case.
The lex loci contractus rule, "as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." Roach , 945 So.2d at 1163-64. "The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc. , 363 F.3d 1089, 1092-93 (11th Cir. 2004). The Eleventh Circuit has held that in the context of Florida's lex loci contractus rule that "[t]he last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." Id.
In the present case, the Pierces argue that the "last act" necessary to complete the contract was when the Pierces tendered payment from their home in Florida, thus making Florida the state in which the contract was executed. (Doc. 27, p. 13). Case law, however, directs the Court to take a different approach.
Generally, in the context of insurance contracts, courts have found that the last act necessary to create an insurance contract is "an insurer's (or its agent's) communication of acceptance of the insured's (or its agent's) offer to purchase insurance." Sun Capital Partners, Inc. v. Twin City Fire Ins. , No. 12-CV-81397-KAM, 2015 WL 4648617, at *2 (S.D. Fla. Aug. 5, 2015). Such communication can be-and often is-oral communication.[2] See, e.g. , B.J. Handley Trucking, Inc. , 363 F.3d at 1093 (upholding the district court's determination that coverage began at the time of oral agreement, not when the insured received written binder). Moreover, the payment of premiums is typically not the "last act" necessary to complete an insurance contract. As explained by the court in The Celotex Corp. v. AUI Ins. Co. , 194 B.R. 668, 678-76 (Bankr. M.D. Fla. Apr. 17, 1996) :
The payment of premiums in a particular state is also not the last act necessary to complete the insurance contract. Payment of premiums ensues from an insurance contract, but the location of payment does not have any bearing on the enforceability of the contract: the location is incidental. If payment of premiums is the last act necessary to complete the contract, one could argue a new contract exists each time a new premium is paid. Further, payment of new premiums in different states on different policies would change the lex loci contractus any time payment is made.
Based on this application of the lex loci contractus rule, the "last act" in this case was when Hartford's agent communicated oral binder to insure the Property. This communication was made when Pranger, as Hartford's agent, assured the Pierces that coverage would begin at 12:01 a.m. on March 15, 2012. Because this communication was made from Connecticut, where Pranger was located at the time of the telephone call, the rule of lex loci contractus requires the laws of the State of Connecticut to be applied to this matter.
III. CONCLUSION
Accordingly, it is ORDERED and ADJUDGED as follows:
*1306 1. Plaintiff's Motion for Determination of Choice of Law is DENIED .
2. The rights and responsibilities of the parties in connection with the policy in this matter shall be governed by the laws of the State of Connecticut.
DONE AND ORDERED in Orlando, Florida on January 13, 2017.

In Shapiro , the Eleventh Circuit explained that there was uncertainty about the Florida Supreme Court's choice-of-law rules, but that "absolute certainty is not required. Although we are Erie -bound, we may exercise an option to make an educated guess as to how the Florida courts would resolve the issue." 899 F.2d at 1118-19.

According to Williston on Contracts, "it is customary for the agent to tell the applicant orally that he or she is 'bound' or 'covered,' and that the policy will be forwarded as soon as it can be prepared. These oral contracts are tolerated, if not encouraged, by longstanding business custom." 16 Williston on Contracts § 49:55 (4th ed.).