[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11823

_____

D.C. Docket No. 2:16-cv-14043-RLR

STATE FARM FIRE & CASUALTY COMPANY,

> Plaintiff - Counter Defendant -
> Appellee,

versus

JAN MARIE WALKER,
CHARLES FRED WALKER,
CHERYL WALKER,

> Defendants - Counter Claimants -
> Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 14, 2018)

Before WILSON and NEWSOM, Circuit Judges, and WRIGHT,[*] District Judge.

PER CURIAM:

---

[*]Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, sitting by designation.

This appeal stems from State Farm's refusal to provide uninsured motorist coverage to the appellants, Charles and Cheryl Walker, following an accident in Florida involving their son, Kevin Walker. The Walkers contend that the umbrella policy, under which they made the claim, was delivered or issued for delivery in Florida. On the other hand, State Farm contends that the policy does not extend to Florida exposures since the policy was purchased, delivered, and serviced in North Carolina. The district court agreed with State Farm and dismissed the case. The Walkers appealed, again claiming that Florida law controls the policy as it was also delivered or issued for delivery in Florida. After a careful review of the record and the parties' briefs, and with the benefit of oral argument, we find no error and affirm.

## I.

The Walkers purchased a personal liability umbrella policy in July 2001, which was subsequently delivered and continuously serviced in North Carolina— their residence at the time they purchased the policy. The umbrella policy is one of excess liability insurance, meaning that it provides additional coverage for unspecified exposures on top of coverage that is already provided from various other primary policies. The policy contained North Carolina terms and provided $1 million in personal liability coverage based on various underlying exposures including cars and real estate.

2

Due to the frequent purchase and sale of their cars and real estate, the Walkers' exposures fluctuated greatly from the time that they purchased the umbrella policy in 2001. At any given point the Walkers owned rental and residential properties, as well as vehicles in North Carolina. In 2010, they sold one of their North Carolina properties and purchased their first Florida property, a small condominium unit. Soon after, the Walkers began to spend at least three months out of the year in Florida, while still primarily residing in North Carolina. A year later in 2011, the Walkers purchased another Florida property in Stuart, Florida, where they began to spend two-thirds of the year. They also relocated a car to use while in Florida. Mrs. Walker informed their North Carolina agent about the purchase of the new Florida residence and requested an auto policy to cover the newly relocated car. Mrs. Walker also directed that the umbrella policy remain in North Carolina—where the Walkers still owned multiple properties and a vehicle. When the North Carolina agent advised Mrs. Walker that she could not issue a Florida auto policy, Mrs. Walker contacted a Florida agent from whom they acquired the appropriate policy.

About two years later in 2013, the Walkers sold their North Carolina residence, but kept at least one other property and a car there. They then called their North Carolina agent to cancel the associated homeowner's policy and to change their mailing address to their Stuart, Florida residence—where they would

3

be spending the winter.  It was at this time that State Farm acknowledged that the Walkers had dual residency in both Florida and North Carolina.  By 2014, the Walkers had purchased another residence in North Carolina, but relocated all three of their cars to Florida.  They also renewed their umbrella policy—a process that they had done annually, each July, since 2001.  On November 6, 2015, their son, Kevin Walker, suffered injuries when, while riding a bicycle on a Florida highway, he was struck by a trailer that dislodged from a passing vehicle.  The Walkers made a claim for uninsured motorist coverage under the umbrella policy (which had just been renewed in July), but State Farm refused to pay.

State Farm sought a declaratory judgment stating that the umbrella policy did not provide uninsured motorist coverage for the Walkers' son's accident.  It argued that under the applicable Florida choice of law principles, the umbrella policy should be interpreted under North Carolina law, where the policy was executed.  The Walkers disagreed, arguing that the policy is not governed by North Carolina substantive law and is instead subject to Florida substantive law.  On cross-motions for summary judgment, the district court sided with State Farm, and the Walkers timely appealed.

## II.

On appeal, there is no issue of material fact in dispute.  Rather, the sole issue in this case is the district court's alleged misapplication of the law to the

undisputed facts.  Thus, we review de novo the district court's decision to grant summary judgment, applying the same standard as the district court.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1242 (11th Cir. 2002).

III.

The Walkers argue that although the excess policy was originally issued in North Carolina, the policy was also "delivered or issued for delivery" in Florida, triggering the application of Florida substantive law.[1]  We disagree.

As an initial matter, neither party disputes that Florida choice of law principles apply.  Consequently, this case is a straightforward application of *lex loci contractus*—a Florida choice of law principle that applies to insurance policies.  It states that a policy will generally be governed by the law of the state in which it was executed.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  *Roach* is directly on point: absent an insured establishing the narrow public policy exception,[2] an insurance policy is generally enforced under the law of the state where it was executed.  *Id.* at 1163, 1165, 1167.

---

[1] The Walkers contend that State Farm failed to comply with Fla. Stat. § 627.727(2), which addresses the extent to which insurers offering policies of excess liability insurance are obligated to comply with the requirements of Florida law concerning uninsured motorist coverage.  Of course, if the policy is governed by North Carolina law, this argument is irrelevant.

[2] The public policy exception allows the policy to be governed by Florida law if the insureds can establish: (1) that they are Florida citizens in need of protection; (2) that the insurer has reasonable notice that the insureds are Florida citizens; and (3) that a paramount public policy interest exists.  *Roach*, 945 So. 2d at 1165, 1167.  The Walkers, however, admit that they are not arguing that this exception applies.

Here, the umbrella policy was executed in 2001 in North Carolina and the Walkers renewed it (each time bearing the same policy number, the same coverage, and the same insureds) annually up until the November 2015 accident. As such, the umbrella policy is governed by North Carolina law—the state where it was executed. *See id.* at 1163.

While both parties agree that the policy was executed in North Carolina, the Walkers contend that the policy was subsequently executed or issued and delivered in Florida, relying upon *Strochak v. Fed. Ins. Co.*, 717 So. 2d 453, 453–54 (Fla. 1998). But that reliance is misplaced. Indeed, *Strochak* itself is an application of *lex loci contracus. See Roach*, 945 So. 2d at 1167 ("*Strochak* involved . . . a straight forward application of the *lex loci* rule."). The relevant factor in *Strochak* is that a *new* policy was executed or issued and delivered in Florida, as was evidenced by: the new policy number, the new insureds, the new coverage, and the Florida language. *Id.* at 1166–67. It was this new policy that triggered the application of Florida substantive law. *Id.*

But *Strochak* stands in contrast to the situation here. No such new policy was executed or issued to the Walkers. Instead, this case involves the same North Carolina policy that was first executed by the Walkers in 2001. It follows then that the policy must be governed where it was executed—North Carolina. *See id.* at 1163–67.

IV.

Accordingly, we find no error.  The district court correctly applied the law to the undisputed facts.  The policy was not delivered or issued for delivery in Florida and as a result it is governed by North Carolina law, because under the applicable law, *lex loci contractus*, we apply the law of the state in which the policy was executed.

**AFFIRMED.**