[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14991
Non-Argument Calendar

_____

D.C. Docket No. 6:17-cv-00920-RBD-DCI

TMH MEDICAL SERVICES, LLC,

Plaintiff-Appellant,

versus

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 4, 2019)

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

TMH Medical Services, LLC appeals from the judgment in favor of defendant National Union Fire Insurance Company of Pittsburgh, Pa. in this insurance coverage case.  We affirm.

I.

In January 2017, TMH began doing business with a group of entities operating under the name Synuity.  Synuity described itself as a Professional Employer Organization (PEO) offering a range of staffing and human resources outsourcing services, including payroll processing, tax remission and reporting, Workers Compensation and health insurance administration, and employment practice liability insurance (EPLI).  One of the Synuity companies, Platinum-HR, LLC, provided payroll processing and tax remission and reporting services for TMH beginning in late January 2017.

In February 2017, TMH received written notice of workplace tort claims by two of its employees against TMH "and related persons and entities."  TMH tendered the claims to Synuity, seeking defense costs and indemnity under Synuity's EPLI policy with National Union—the policy at issue here.  The policy provided EPLI coverage for specified claims against Synuity and its PEO clients, under specified conditions.

Apparently recognizing that the policy required, among other things, a written agreement between Synuity and its PEO client, TMH and Synuity prepared

2

a "Service Agreement" using parts of two form contracts provided by Synuity. The Service Agreement bore an "entered into" date of January 1, 2017, though it was completed and executed by the parties on March 13, 2017.

National Union agreed to provide a defense for the claims against TMH, subject to a reservation of rights, but ultimately determined that the claims were not covered under the policy and declined to provide indemnity for TMH or participate in the settlement of the claims. TMH filed suit against National Union in federal court, alleging that the insurer had wrongfully failed to indemnify and defend TMH for the claims. The parties filed competing motions for summary judgment, and the district court granted National Union's motion, denied TMH's, and entered judgment for National Union on all of TMH's claims. This appeal followed.[1]

## II.

"We review de novo a district court's rulings on cross-motions for summary judgment." *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). On each motion, we view the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate "if the movant shows that

---

[1] On appeal, TMH presents argument related to its claim for indemnity only. TMH has therefore abandoned its claim that National Union failed to provide a defense. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that Florida law applies in this diversity-jurisdiction case involving insurance coverage under a policy that was delivered and executed in Florida. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011) (per curiam); *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). Questions regarding the interpretation of a contract, including a contract for insurance, are matters of law that we review de novo. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015); *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010).

## III.

Under Florida law, an insurance contract is interpreted according to the plain language of the policy. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002). Ambiguous terms are construed in favor of coverage, but "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation omitted). "In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'"

4

*Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (citation omitted).

Synuity's policy with National Union provided EPLI coverage for Synuity's PEO clients, "but only with respect to PEO Client Company Claim(s)." Based on the various definitions and conditions in the policy, this meant that TMH was entitled to indemnity for its employees' claims only if—among other conditions— it leased the claimant-employees from Synuity through a written employee leasing agreement that was in effect at the time the claims were made. Because TMH did not have such an agreement with Synuity when it received notice of the claims (or at any other time), the district court correctly determined that TMH was not entitled to coverage under the policy.[2]

The practice of employee leasing is regulated by statute in Florida. It is a crime for any entity not licensed by the state to operate as an employee leasing company, and licensed entities may lease employees only through written agreements that satisfy certain statutory conditions. Fla. Stat. Ann. §§ 468.531; 468.525(3)(a), (4). Among other things, the leasing contract must contain provisions by which the leasing company (1) reserves "a right of direction and

---

[2] Because we conclude that TMH and Synuity never had a valid employee leasing agreement, we need not resolve the parties' dispute about whether TMH's written agreement with Synuity was in effect when the claims were made.

control over leased employees assigned to the client's location"; (2) assumes "responsibility for the payment of wages to the leased employees without regard to payments by the client to the leasing company"; (3) retains "authority to hire, terminate, discipline, and reassign the leased employees," subject to the client's approval; and (4) confirms that it has "given written notice of the relationship between the employee leasing company and the client company to each leased employee it assigns to perform services at the client's worksite." *Id.* § 468.525(4)(a)–(b), (d), (f).  TMH had no written agreement with Synuity that satisfied those terms.

TMH argues that a Synuity brochure that it received on an unspecified date, along with email correspondence and a letter from TMH to a third-party insurance company naming Synuity as its insurance agent, constituted a written agreement for PEO services.  The brochure described Synuity as a PEO and outlined some of the services that Synuity offered, including payroll and benefits administration and employer risk mitigation services such as EPLI and unemployment insurance.  The email correspondence contained a discussion of TMH's Workers' Compensation and health insurance needs.  But none of those writings referenced an employee leasing arrangement between Synuity and TMH or fulfilled the statutory requirements for an employee leasing agreement.  And in any event, even if read together, the brochure and correspondence did not evince mutual agreement to any

6

specific terms—ultimately, Synuity did not provide either health insurance or Workers' Compensation insurance for TMH's employees.  Writings in which the parties discuss available services but do not specify essential terms do not amount to a binding agreement under Florida law.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *Irby v. Memorial Healthcare Grp.*, 901 So. 2d 305, 306 (Fla. Dist. Ct. App. 2005).

Next, TMH contends that the Service Agreement executed by the parties in March 2017 met the policy's requirement for a written PEO service agreement. But regardless of what other PEO services may have been contemplated in the Service Agreement, it did not meet Florida's statutory requirements for an employee leasing agreement—and therefore could not meet the policy's requirement for a written agreement to lease the claimants to TMH.[3]  *See Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1297 (11th Cir. 1999) ("state law is read into and becomes part of a contract").  The Agreement did not describe a coemployer relationship between Synuity and TMH, reserve to Synuity any right of direction and control over leased employees, require Synuity to assume responsibility for payment of wages regardless of payments to Synuity by TMH, give Synuity authority to hire, fire, discipline, or reassign leased employees, or require Synuity

---

[3] The Service Agreement contained an express choice-of-law provision stating that it was to be "governed by and construed in accordance with the laws of the State of Florida."

to provide written notice of the relationship between Synuity and TMH to the leased employees.  *See* Fla. Stat. Ann. § 468.525(4)(a)–(b), (d), (f).  To the contrary, the Agreement reserved exclusive direction and supervision of the "Contract Personnel" to TMH, gave TMH exclusive authority to make hiring and retention decisions, provided that Synuity would have no obligation to pay wages if TMH did not wire payroll funds to Synuity in advance, and said nothing about providing notice to employees of the contractual relationship between TMH and Synuity.

TMH points out that the relevant statute permits the client company to retain "such sufficient direction and control over the leased employees as is necessary to conduct the client's business," and implementing regulations provide that the PEO need not actually exercise its hiring and firing authority on the jobsite; the "client shall be allowed to exercise such authority as may be allocated to the client, in writing, and in conformity with Florida law."  Fla. Stat. Ann. § 468.525(4)(a); Fla. Admin. Code Ann. r. 61G7-6.001(9).  But the contract that TMH and Synuity entered into did not merely allocate worksite authority between them; it gave TMH exclusive control of its employees and exclusive authority to hire, fire, and discipline them.  Florida law plainly prohibits an employee leasing arrangement in which the leasing company surrenders all authority over the employees to the client and retains none for itself.

8

IV.

Because the Service Agreement failed to comply with multiple statutory requirements for employee leasing contracts, it was not a valid employee leasing agreement.  And because TMH did not have a valid written agreement to lease the employee-claimants from Synuity, the employees' claims against TMH were not covered under Synuity's EPLI policy with National Union.  The district court therefore correctly denied TMH's motion for summary judgment and granted summary judgment in favor of National Union.

**AFFIRMED.**