463 So.2d 1184 (1985)
AUTO-OWNERS INSURANCE CO., Appellant,
v.
Margaret PROUGH, Formerly Margaret Pipkin, Appellee.
No. 83-2286.
District Court of Appeal of Florida, Second District.
January 9, 1985.
Rehearing Denied February 25, 1985.
Donald G. Jacobsen, Lane, Trohn, Bertrand & Williams, P.A., Lakeland, for appellant.
Harvey B. Hardy, Jr., Wallace & Hardy, P.A., Lakeland, for appellee.
LEHAN, Judge.
The trial court's final partial summary judgment required "stacking" of uninsured motorist coverage. We affirm.
Appellee was the named insured in an insurance policy issued by appellant which covered two motor vehicles. Appellee was driving one of the vehicles at the time of an automobile accident with a tortfeasor motorist whose liability insurance was limited to $10,000. Appellee was severely injured. Her medical bills exceeded $180,000. The policy provided that uninsured motorist coverage applied to underinsured motorist situations.
Appellee and appellant disagreed as to the amount of uninsured motorist coverage available to appellee under the policy. Appellant took the position that only $25,000 uninsured motorist coverage, the amount of coverage on one vehicle under the policy terms, was available. Appellee's position was that she was entitled to $25,000 uninsured motorist coverage on each of the vehicles insured by the policy, a total of $50,000 coverage. There was no dispute that whatever uninsured motorist coverage was afforded under the policy would be subject to a $10,000 set-off for the tortfeasor's liability insurance limits.
The parties filed opposing motions for summary judgment. The trial court granted appellee's motion, holding that appellee was entitled to "stack" her uninsured motorist coverage notwithstanding the policy's anti-stacking provision. The issue on appeal is whether an insurance policy which insures more than one vehicle may validly prohibit stacking uninsured motorist coverage and limit that coverage to the amount stated for one vehicle. We answer that question in the negative and affirm.
The insurance policy in this case provided:
We will pay up to the limits stated in the Declarations for this coverage. The limit stated for "each person" is the most we will pay for all damages, including damages for expenses and care and loss of services, for bodily injury to one person in any one occurrence. We will pay no more than the limit stated for "each occurrence" when two or more persons are injured in the same occurrence. Charging premiums under this policy for more than one automobile does not increase *1185 the limit of our liability as stated for "each person" and "each occurrence." The amount payable under this policy shall be reduced by any amount paid or payable for the same injury under the Liability Coverage of this policy or under any workers' compensation law and by the amount paid by or on behalf of any person who may be legally responsible.
(Emphasis added.) The portion emphasized reinforces the general language of the preceding provisions and prohibits "stacking" by stating that even though premiums are charged for more than one automobile, coverage is no more than the $25,000 limit.
Appellee's argument is that the foregoing anti-stacking provision is against public policy. In support appellee principally cites Sellers v. GEICO, 214 So.2d 879 (Fla. 1st DCA 1968), cert. dismissed, 229 So.2d 873 (Fla. 1969) and Tucker v. GEICO 288 So.2d 238 (Fla. 1973). Sellers and Tucker held that when an uninsured motorist endorsement stated per person accident policy limits and was attached to a combination policy covering two vehicles with a separate premium charged for each, the insured was entitled to aggregate, or "stack," the amount of coverage provided for each vehicle when the insured was injured by an uninsured motorist. (Appellee states that a separate premium was paid on each of the insured vehicles in the case at hand.) Included in the reasoning of Sellers and Tucker was the position that since the law was settled that there can be recovery for one accident by an insured under each of multiple uninsured motorist policies covering various vehicles, there was "no reason why a different rule should be applied merely because the insurance coverage afforded on different vehicles is combined in one instead of two or more policies." Sellers, 214 So.2d at 882. See Tucker, 288 So.2d at 242. Tucker proscribes an anti-stacking policy provision as to uninsured motorist coverage which was on a "presumed basis of single car auto liability coverage had the uninsured motorist purchased the same." 288 So.2d at 242. Tucker and Sellers, as the parties to this appeal argue, were grounded upon public policy which, as explained below, we believe is still in effect.
It is true that Sellers and Tucker were decided before the legislature addressed the subject of stacking uninsured motorist coverage. In 1976, after those cases were decided, the legislature enacted section 627.4132, Florida Statutes (1976), which specifically prohibited stacking of automobile insurance coverage. That statute provided:
If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, uninsured motorist, personal injury protection, or any other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.
§ 627.4132, Fla. Stat. (1976). However, in 1980, the legislature amended section 627.4132. Under that amendment, which was in effect at the relevant times here, the general prohibition against stacking continued, but the legislature added a proviso that "[t]his section shall not apply ... to [u]ninsured motorist coverage."
There appear to be two possible reasons for the 1980 legislative exclusion of uninsured motorist coverage from the general anti-stacking statute. Appellee argues that the reason must have been to revert back to the pre-1976, judicially-declared public policy favoring stacking of uninsured motorist coverage. Appellant contends that the reason must have been only to remove any legislative prohibition against stacking of uninsured motorist coverage and to leave the matter of whether *1186 or not to stack to the contracting parties. Both argue persuasively. Our review of the legislative history of the 1980 amendment requires us to conclude that appellee's argument is correct.
It is apparent that the Florida Legislature intended for the amendment to once again put into effect the prior public policy regarding stacking of uninsured motorist benefits.
This bill simply eliminates the prohibition against stacking and would thus revive prior case law which permitted and determined the extent of the stacking of uninsured motorist insurance policies.
Staff of House Comm. on Insurance, 1980 Fla. Legislature, Reg.Sess., Report on Stacking of Uninsured Motor Vehicles, at 2 (April 28, 1980). See also Senate Staff Analysis and Economic Impact Statement, 1980 Fla.Leg., Reg.Sess., Report on Stacking of Uninsured Motor Vehicle Insurance, at 1 (May 30, 1980). See Rhodes, White, and Goldman, The Search for Intent: Aids to Statutory Construction in Florida, 6 Fla.St.U.L.Rev. 383, 391-392 (1978). Accordingly, the rationale of Sellers and Tucker was intended to be revived.
In Sellers the insurance policy contained an anti-stacking provision which was "the standard provision incorporated in most automobile liability insurance policies whether coverage is limited to one vehicle, or to several vehicles." Sellers, 214 So.2d at 880. The Sellers court concluded that it could not reasonably be assumed from such a standard provision that the limit of uninsured motorist coverage should be that provided for only one vehicle, regardless of the number of vehicles insured. Id. The somewhat different anti-stacking language in the policy in the instant case may well have become standard following enactment of the 1976 statutory anti-stacking requirement. In Tucker, the relevant policy language was more specific than that in Sellers. The Tucker policy referred to liability of the insurance company for uninsured motorist coverage being limited "regardless of the number of automobiles ... to which this policy applies." 288 So.2d at 240. The policy in the instant case provides that charging premiums for insurance on more than one automobile does not result in stacking. This policy is, therefore, more specific in prohibiting stacking than the policies in Sellers and Tucker. Nonetheless, in view of the foregoing legislative intent behind the 1980 amendment, we feel we must conclude that the anti-stacking provision in the policy in this case is against public policy and is not enforceable. See State Farm Mutual Automobile Insurance Co. v. Gant, 460 So.2d 912 (Fla. 2d DCA 1984) question certified on rehearing, No. 83-1142 (Fla. 2d DCA Dec. 19, 1984).
At the same time, we recognize that there are arguments for appellant's position. For example, although appellee states that a separate premium was paid for insurance on each of the insured vehicles, the evidence does not establish that appellee paid for the right to stack. In fact, the policy provided notice to appellee that stacking was not contracted for. Accordingly, the rationale of May v. State Farm Mutual Automobile Insurance Co., 430 So.2d 999 (Fla. 4th DCA 1983), provides support for appellant's position. However, that case was decided under the 1976 anti-stacking provision. See Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077 (Fla. 1978). Also, the rationale of France v. Liberty Mutual Insurance Co., 380 So.2d 1155 (Fla.3d DCA 1980) can be argued to be against our holding. In France the Fourth District Court of Appeal recognized the right of insurers to limit their liability for uninsured motorist coverage. However, the France result was conditioned upon there being no countervailing public policy. Id. at 1156. In addition, from the standpoint of abstract fairness, it would not seem unreasonable that one, like appellee here, who has coverage on one automobile which is involved in an accident with an uninsured motorist should be restricted to uninsured motorist coverage for one accident occurrence with that automobile as provided in the policy. However, this case is controlled by statutory construction.
*1187 As we have stated above, the language of the 1980 amendment is susceptible of two opposing interpretations. The interpretation we follow is, we believe, mandated by the foregoing unambiguous legislative history.
Affirmed.
SCHEB, A.C.J., and CAMPBELL, J., concur.