[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 02, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13247

_____

D. C. Docket No. 06-00336-CV-OC-10-GRJ

JOHN RANDO,
GAIL RANDO,

                                        Plaintiffs-Appellants,

versus

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 2, 2009)**

Before HULL, WILSON and HILL, Circuit Judges.

HULL, Circuit Judge:

In this diversity case, Appellants John and Gail Rando (the "Randos")

challenge the district court's grant of summary judgment to Appellee Government Employees Insurance Company ("GEICO") on the Randos' automobile insurance claims against GEICO. After review and oral argument, we certify the determinative issue in this case to the Florida Supreme Court as outlined below.

## I. BACKGROUND

In October 2004, the Randos moved from Delaware to Florida. Before the move, the Randos and their daughter Laura Rando had a single automobile insurance policy issued by GEICO. The policy covered three cars and listed John and Gail Rando as the named insureds. When the Randos moved to Florida, Laura Rando remained in Delaware, where she has continued to reside.

On October 12, 2004, John Rando contacted GEICO and requested that the policy be changed to reflect the fact that two of the cars would now be kept (i.e., garaged) and driven in Florida. The third car, a 1996 Honda driven primarily by Laura Rando, still would be garaged and driven in Delaware. On October 15, 2004, GEICO changed the policy to a Florida-rated policy covering two cars, and changed the garage location and mailing address to the Randos' new address in Florida. We refer to this policy as the "Florida Policy."

At the same time, GEICO created a new Delaware-rated policy, to which we refer as the "Delaware Policy," for the 1996 Honda driven by Laura Rando in

Delaware. As with the Florida Policy, the Delaware Policy identified John and

Gail Rando as named insureds. The Delaware Policy listed Laura Rando as the

principal operator of the 1996 Honda, and reflected that the car would remain

garaged in Delaware. The Delaware Policy was executed and delivered in Florida.

The Delaware Policy provided uninsured/underinsured motorist coverage for

bodily injury to John and Gail Rando for up to $300,000 for each person/each

occurrence. The Delaware Policy also contained a section entitled "Limit of

Liability" that provided, among other things, that the limits of separate policies

may not be combined, stating:

> When [uninsured/underinsured motorist] coverage is afforded to two
> or more autos under this policy, the limits of liability shall apply
> separately to each auto as stated in the declarations. But these limits
> may not be combined so as to increase the stated coverage for the auto
> involved in the accident.
>     If separate policies with us are in effect for you or any person in
> your household, they may not be combined to increase the limit of our
> liability for a loss.

(Emphasis added.) This provision is known as an "anti-stacking" provision

because it prevents coverages for different vehicles or from separate policies from

being "stacked"–i.e., added–together.[1]

---

[1]"Stacking is a judicial creation, based on the common sense notion that an insured should be entitled to get what is paid for. Thus, if the insured pays separate premiums for uninsured motorist protection on separate vehicles, the insured should get the benefit of coverage for each individual premium paid." United Servs. Auto. Ass'n v. Roth, 744 So. 2d 1227, 1229 (Fla. Dist. Ct. App. 1999) (citation omitted).

3

On August 4, 2005, in Marion County, Florida, John Rando was seriously injured in an automobile crash caused by an underinsured driver. John Rando's injuries include severe permanent brain damage that prevents him from ever working in the future. The Randos reached a $10,000 settlement with the underinsured driver, and GEICO paid the Randos $600,000 in underinsured motorist benefits pursuant to the Florida Policy ($300,000 for each of the two vehicles insured under the policy).[2]

The Randos demanded that GEICO also pay them as the named insureds under the underinsured motorist provisions of the Delaware Policy. GEICO refused, citing the Delaware Policy's anti-stacking provision. The Randos sued GEICO in Florida state court, seeking a declaration of coverage and damages for breach of GEICO's duties under the Delaware Policy.

GEICO removed the action to federal district court and, after discovery, the parties filed cross-motions for summary judgment. The district court granted GEICO's summary judgment motion and denied the Randos' motion.[3]

The district court acknowledged that Florida law applies to interpret the Delaware Policy because it was executed in Florida and the lex loci contractus

_____

[2]Presumably, the Florida Policy did not have an anti-stacking provision.

[3]The parties agreed as to the amount of damages, should coverage exist. Thus, the only issue is coverage.

4

doctrine applies. The district court also concluded that Florida law permits insureds, like John and Gail Rando, to recover uninsured or underinsured motorist benefits under two or more separate policies for the same accident and injuries. However, the district court concluded that such coverage stacking was not permitted here because: (1) the Delaware Policy's anti-stacking provision prohibited it; and (2) the Delaware Policy's anti-stacking provision was valid and enforceable under Florida law. The Randos appealed, raising a single issue: whether the anti-stacking provision in the Delaware Policy is enforceable under Florida law.[4]

## II. CHOICE OF LAW

Our review begins with choice of law – specifically, whether Florida or Delaware law applies to the Delaware Policy. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005). Hence, we apply Florida's choice-of-law rules.

With regard to insurance contracts, Florida follows the "lex loci contractus" choice-of-law rule, which "provides that the law of the jurisdiction where the

---

[4]We review de novo the district court's disposition of the parties' summary judgment motions. HR Acquisition I Corp. v. Twin City Fire Ins. Co., 547 F.3d 1309, 1313-14 (11th Cir. 2008).

5

contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006). Lex loci contractus is, in general, an "inflexible," bright-line rule that exists "to ensure stability in contract arrangements." Id. at 1164.[5]

We turn to the key issue in the case: whether the Delaware Policy's anti-stacking provision is enforceable under Florida law. We set forth the relevant statutes and the Florida cases interpreting them. We then outline the parties' contentions and state the certified question.

### III. FLORIDA STATUTES

**A.      Section 627.0851**

In 1961, the Florida legislature enacted Florida Statutes § 627.0851, which governed the provision of uninsured motorist ("UM") insurance coverage in Florida.[6] Section 627.0851 provided that insurance companies that "delivered or issued for delivery" automobile liability policies in Florida for cars "registered or

---

[5]Florida recognizes an exception to the lex loci contractus rule where a provision contained in an insurance policy executed **outside** Florida violates a paramount Florida public policy. However, the parties agree the Delaware Policy was executed in Florida and Florida law applies.

[6]Because Florida law defines "uninsured motor vehicle" to include those which are "underinsured" (i.e., insured for less than the damages suffered by a person legally entitled to recover), see Fla. Stat. § 627.727(3)(b), we likewise discuss uninsured and underinsured scenarios under the common rubric of uninsured motorist coverage.

6

principally garaged" in Florida shall provide uninsured motorist coverage, stating:

> **No automobile liability insurance**, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, **shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state** unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, arising therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.

Fla. Stat. § 627.0851(1) (1961). Section 627.0851 was later re-codified at Florida Statutes § 627.727. Section 627.0851 did not contain any provision addressing the stacking of UM coverage for different vehicles or policies.

Two Florida Supreme Court decisions, however, ruled on § 627.0851 vis-a-vis anti-stacking clauses in automobile policies. In Sellers v. United States Fidelity & Guaranty Co., 185 So. 2d 689, 690 (Fla. 1966), the Florida Supreme Court concluded that § 627.0851 invalidated an insurance policy's anti-stacking provision that permitted the insurer to deny UM coverage if the insured had other similar UM insurance available to him. The Florida Supreme Court noted that § 627.0851 provided statutory requirements as to UM coverage, and reasoned:

> There appears no latitude in the statute for an insurer limiting its liability through "other insurance"; "excess-escape" or "pro rata" clauses . . . . If the statute is to be meaningful and controlling in respect to the nature and extent of the coverage . . . , all inconsistent

7

clauses in the policy . . . must be judicially rejected.

Id. Thus, the Florida Supreme Court stated, "the statute does not limit an insured only to one $10,000 recovery under said coverage where his loss for bodily injury is greater than $10,000 and he is the beneficiary of more than one policy issued under § 627.0851." Id. at 692.

Eight years after Sellers, the Florida Supreme Court again considered § 627.0851 and a UM "other insurance" clause, this time in the choice-of-law context. Gillen v. United Servs. Auto. Ass'n, 300 So. 2d 3 (Fla. 1974). In Gillen, the plaintiffs Gillens lived in New Hampshire, where they took out two automobile insurance policies with defendant USAA to cover their two cars in New Hampshire. 300 So. 2d at 4-5. Both New Hampshire policies provided $10,000 UM coverage. Id. The Gillens moved to Florida, notified USAA of the move, and replaced one of their cars with a new one. USAA canceled the one New Hampshire policy covering the sold car and issued a new policy to the Gillens in Florida to cover their new car. Id. at 5. Later, the Gillens were in a serious auto accident caused by an uninsured driver. USAA paid the UM limit on the new Florida policy but not on the New Hampshire policy on the Gillens' other car, relying on an other insurance clause in the New Hampshire policy. Id. The Gillens sued, seeking recovery on both policies and asserting that the other

8

insurance clause in the New Hampshire policy was contrary to Florida's public policy, as enunciated in Sellers. Id. They prevailed in the trial court, but the District Court of Appeal reversed, concluding that the New Hampshire policy should be governed by New Hampshire law because it was issued and delivered there. Id. The Gillens appealed to the Florida Supreme Court.

The Florida Supreme Court initially discussed Sellers and stated that it saw "no reason to alter our position on the subject of 'other insurance' clauses." Id. at 5-6. USAA argued that New Hampshire law applied under the rule of lex loci contractus. The Gillens argued that the court should abandon the lex loci contractus rule in favor of the choice of law approach enunciated in § 188 of the Restatement (Second) of Conflict of Laws (1969), which "requires application of the law of the state having the most significant relationship to the transaction." Gillen, 300 So. 2d at 6. The Gillens maintained that Florida had the most significant relationship to the New Hampshire policy at the time of the accident. Id. at 6-7.

The Florida Supreme Court concluded that it was not necessary to consider whether to adopt the "most significant relationship" choice-of-law test because, in any event, Florida law governed the New Hampshire policy through operation of the public policy exception to the lex loci contractus rule. Id. The Florida

9

Supreme Court reasoned:

> New Hampshire has a policy permitting "other insurance" clauses as a means of avoiding liability. This policy is grounded in general on freedom of contract principles, to the extent there is no conflict with relevant state statutory authority. The New Hampshire [Supreme] [C]ourt seemed to indicate that the main purpose of their statute was to provide protection only up to the minimum statutory limits. Florida's statute has no similarly restricted purpose and, in fact, has been interpreted in Sellers . . . to implicitly forbid "other insurance" clauses. . . . Here, the substantial interest of Florida in protecting its citizens from the use of "other insurance" clauses rises to a level above New Hampshire's interest in permitting them. Public policy requires this Court to assert Florida's paramount interest in protecting its own from inequitable insurance arrangements.

Id. at 7 (citations omitted).

In Gillen, USAA argued that the language of § 627.0851(1) did not apply because § 627.0851(1) referred to insurance "delivered or issued for delivery in [Florida]" and the New Hampshire policy was issued and delivered in New Hampshire. Id. at 6. The Florida Supreme Court rejected USAA's argument, stating:

> While it is true that the Legislature in its language [of § 627.0851(1)] thus limited the application of the statute, there is no indication that the Legislature necessarily meant to exclude cases such as the one sub judice. Given the rationale behind this Court's decision in Sellers, supra, this is, that the public policy of this State requires the elimination of "other insurance" provisions, there is no reason to limit its scope in a situation such as the present one.

Id. The Florida Supreme Court concluded that USAA (1) knew of the Gillens'

10

move and that coverage under both policies would be shifted to Florida, and (2) collected premiums on both policies but claimed it was liable under only one. Under these facts, the Florida Supreme Court concluded that "[t]here is nothing in law or equity which should aid an insurance company in so one-sided an arrangement." Id. The Florida Supreme Court added that the insureds had moved from New Hampshire and "were in the process of establishing themselves as permanent residents of this State, and as such are proper subjects of this Court's protection from injustice or injury." Id. Thus, the Florida Supreme Court reversed the District Court of Appeal's decision and instructed that court to affirm the judgment of the trial court. Id. at 7.

**B.** **Section 627.4132**

In 1976, the Florida legislature enacted Florida Statutes § 627.4132, which prohibited stacking of insurance coverages. It stated:

> If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, personal injury protection, or other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage of any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.

11

Fla. Stat. § 627.4132 (1976). However, in 1980 the legislature amended § 627.4132 to state that the statute did not apply to UM coverage. Id. (1980).

One Florida appellate court concluded that, in passing the 1980 amendment, the legislature intended to "revert back to the pre-1976, judicially-declared public policy favoring stacking of uninsured motorist coverage" instead of simply removing the statutory prohibition of stacking UM coverage and "leav[ing] the matter of whether or not to stack to the contracting parties." Auto-Owners Ins. Co. v. Prough, 463 So. 2d 1184, 1185-86 (Fla. Dist. Ct. App. 1985). Thus, the Florida appellate court in Prough concluded that an anti-stacking provision was "against public policy and [was] not enforceable." Id. at 1186.[7]

## C.     Section 627.727

In 1987, the Florida legislature amended Florida Statutes § 627.727 (the successor to § 627.0851) to add a provision (subsection (9)) permitting insurers in some circumstances to prohibit UM coverage stacking. Subsection (1) of § 627.727 remains virtually the same as its predecessor, § 627.0851(1), construed

---

[7]There were no choice-of-law issues in Prough; thus, the Florida court's conclusion rested not upon the public policy exception to the lex loci contractus rule, but upon the familiar rule of contract law that "[a]greements in violation of public policy are void." Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Henley & Beckwith, Inc., 66 So. 2d 818, 823 (Fla. 1953). The standard for the "against public policy" doctrine differs from that of the public policy exception because, among other things, the public policy exception requires a paramount or fundamental Florida public policy. See Roach, 945 So. 2d at 1165; Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 311-12 (Fla. 2000).

12

by the Florida Supreme Court in <u>Sellers</u> and <u>Gillen</u>.  Section 627.727(1) provides

that:

> **No motor vehicle liability insurance policy** which provides bodily injury liability coverage **shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state** unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.  However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

Fla. Stat. § 627.727(1) (emphasis added).  However, the amendment added

subsection 9 to § 627.727, which allows policies to prohibit stacking if the

insurance company satisfies certain requirements:

> Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
>
> (a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident . . . .
>
> In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the office, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations.  If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. . . .  Any insurer

13

who provides coverage which includes the limitations provided in this subsection shall file revised premium rates . . . [which] shall . . . reflect a reduction in the uninsured motorist coverage premium of at least 20 percent for policies with such limitations. . . .

Fla. Stat. § 627.727(9). Specifically, the insurer must satisfy the statutory requirements of notice to the insured, knowing acceptance by the insured, and filing of revised premium rates in order for an anti-stacking provision to be valid. Gov't Employees Ins. Co. v. Douglas, 654 So. 2d 118, 120-21 (Fla. 1995). The parties agree that GEICO did not send notice to the Randos or satisfy the requirements of § 627.727(9). Accordingly, the issue becomes whether GEICO's anti-stacking provision is enforceable under Florida law.

## IV. CONTENTIONS OF THE PARTIES

The parties dispute the nature and extent of Florida's public policy regarding the stacking of UM coverage.

The Randos argue that: (1) Florida's pro-stacking policy is judicially created and protects residents of Florida who pay insurance premiums for UM coverage; (2) Florida's pro-stacking public policy prohibits anti-stacking clauses in UM policies unless the notice and other requirements in § 627.727(9) are met; (3) Florida's pro-stacking policy does not depend upon the satisfaction of the two conditions in Florida Statutes § 627.727(1) as to where the policy is delivered or the car garaged but depends only upon the payment of separate premiums by

14

Florida residents; (4) the Florida Supreme Court in <u>Gillen</u> applied Florida's pro-stacking public policy to a New Hampshire insurance policy that was issued and delivered in New Hampshire even though it did not meet one of the conditions in § 627.727(1); and (5) the state where the policy is delivered and the state where the insureds reside are more important than the location of the vehicle, because under Florida law "uninsured motorist coverage is personal to an insured" and "does not attach to a specific vehicle." <u>Hines v. Wausau Underwriters Ins. Co.</u>, 408 So. 2d 772, 774 (Fla. Dist. Ct. App. 1982); <u>see</u> <u>Coleman v. Fla. Ins. Guar. Ass'n</u>, 517 So. 2d 686, 689 (Fla. 1988) ("Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insureds happen to be in at the time.").

GEICO, on the other hand, contends that (1) Florida's "pro-stacking doctrine was preempted in 1987 by the Legislature's amendment to Section 627.727 adding subsection (9) to the uninsured motorist statute"; (2) the pre-1987 case law cited by the Randos is inapplicable insofar as it invalidates anti-stacking (i.e., "other insurance") clauses on public policy grounds; (3) Florida's public policy concerning uninsured motorist coverage cannot be broader than the statute on

15

which it is based; (4) Florida's pro-stacking policy extends only to policies that are "delivered or issued for delivery" in Florida with respect to vehicles that are "registered or principally garaged" in Florida as set forth in § 627.727(1); (5) the pro-stacking doctrines in Sellers and Gillen are no longer applicable to policies of uninsured motorist insurance that contain anti-stacking provisions; (6) other than those vehicles referenced in § 627.727(1), Florida has no public policy that disfavors anti-stacking provisions in insurance policies issued and delivered in Florida; and (7) the Randos fail to cite any post-1987 case law applying the pro-stacking doctrine.

## V. CERTIFICATION

Because this appeal depends on resolution of unsettled Florida law, we certify the following question to the Supreme Court of Florida:

WHETHER, UNDER FLORIDA LAW, AN AUTOMOBILE INSURANCE POLICY — WHICH WAS EXECUTED, ISSUED AND DELIVERED IN FLORIDA TO THE NAMED INSUREDS RESIDING IN FLORIDA FOR A CAR THAT IS REGISTERED AND GARAGED IN DELAWARE — MAY VALIDLY PROVIDE THAT UNINSURED MOTORIST COVERAGE UNDER THAT POLICY MAY NOT BE COMBINED WITH UNINSURED MOTORIST COVERAGE PROVIDED BY A SEPARATE AUTOMOBILE POLICY ALSO

16

ISSUED BY THE INSURER TO THE NAMED INSUREDS IN FLORIDA.

The phrasing used in this **certified question** should not restrict the Supreme Court of Florida's consideration of the problem posed by this case. This extends to the Supreme Court of Florida's restatement of the issues and the manner in which the answer is given. In order to assist the Supreme Court of Florida's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.

**QUESTION CERTIFIED.**

17