[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10846
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-61815-WPD

WESTERN SURETY COMPANY,

Plaintiff-Cross Defendant-Appellee,

versus

PENN J. STEUERWALD,

Defendant-Cross Claimant- Appellant,

HON. MARK SPEISER, et al.,

Cross Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(January 16, 2019)

Before JORDAN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal arises from an indemnification claim Western Surety Company brought against Penn J. Steuerwald based on a surety bond that WSC issued in connection with a matter in Florida probate court.  The district court dismissed Mr. Steuerwald's cross-complaint and counterclaim with prejudice and granted summary judgment in favor of WSC, ruling that Mr. Steuerwald was contractually obligated to indemnify WSC for the amount WSC paid to settle claims against the surety bond.

## I

In 2009, Mr. Steuerwald was appointed by a Florida probate court to be the personal representative of his brother's estate.  Before the probate court would issue a letter of administration, however, it required Mr. Steuerwald to obtain a $1 million probate bond.  On March 3, 2009, Mr. Steuerwald executed a surety bond application and agreement with CNA Surety and WSC for a $1 million surety bond.  Three days after Mr. Steuerwald signed the agreement, WSC issued the bond and Mr. Steuerwald filed it with the Florida probate court.

The surety agreement contained separate settlement, collateral, and indemnification provisions.  The settlement provision provided that "[WSC] shall

2

have the right to handle or settle any claim or suit in good faith and [WSC]'s decision shall be binding and conclusive on [Mr. Steuerwald]." D.E. 1-4 at 1, ¶ 5. The indemnification provision stated that Mr. Steuerwald agreed

> [t]o completely INDEMNIFY [WSC] from and against any liability, loss, cost, attorneys' fees and expenses whatsoever which [WSC] shall at any time sustain as surety or by reason of having been surety on this bond or any other bond issued for any applicant and or indemnitor, or for the enforcement of this agreement, or in obtaining a release or evidence of termination under such bonds, regardless of whether such liability, loss, costs, damages, attorneys' fees and expenses are caused, or alleged to be caused, by the negligence of [WSC].

*Id.* at ¶ 2 (emphasis in original). And if claims were made against the bond as a result of the suretyship, the Mr. Steuerwald agreed to post collateral sufficient to satisfy such claims. *Id.* at ¶ 4.

Over three years later, in October of 2012, the probate court removed Mr. Steuerwald as personal representative of the estate, citing several instances of misconduct, and ordered him to repay the estate for his improper payments and the estate's attorney's fees. Pursuant to the probate court's judgment, the estate sent WSC a demand letter to collect its claims based on Mr. Steuerwald's misconduct as personal representative from the probate bond. WSC twice demanded Mr. Steuerwald to post collateral to satisfy the estate's claims against WSC, but Mr. Steuerwald did not comply. WSC then entered into a settlement agreement with

3

the estate, agreeing to pay the estate $970,103.91.  After recouping a fraction of the amount it paid to settle claims against the bond, WSC sought $772,245.32 from Mr. Steuerwald under the surety agreement's indemnification provision.

Mr. Steuerwald filed a pro se cross-complaint and counterclaim on November 1, 2016, alleging claims against the Florida probate court judge, WSC's attorney in the probate action, CNA Surety, and WSC.  The cross-complaint and counterclaim generally attempted to assert that the probate court judge and local attorneys had engaged in a conspiracy to defraud out-of-state beneficiaries of the estate, like Mr. Steuerwald.  *See* D.E. 21 at ¶ 2.  On January 17, 2017, the district court dismissed Mr. Steuerwald's cross-complaint and counterclaim with prejudice, reasoning that he failed to allege jurisdiction, failed to state a claim, and that the claims were barred by waiver, judicial immunity, litigation privilege, and res judicata.  According to the district court, Mr. Steuerwald's cross-complaint amounted to "a diatribe alleging the system of law and order and judicial process was designed to conspire against him" but was "devoid of any legal reasoning[,] . . . frivolous[,] and without any basis of law or fact."  D.E. 38 at 3–4 (internal quotation marks omitted).

After dismissing Mr. Steuerwald's claims, the district court granted summary judgment to WSC on its indemnification claims and ordered Mr.

4

Steuerwald to pay WSC $772,245.32 plus prejudgment interest, totaling $1,313,898.44.   The district court applied New York law to determine Mr. Steuerwald's contractual obligations based on the doctrine of *lex loci contractus* and concluded that Mr. Steuerwald raised no meritorious defenses or disputed issues of material fact to prevent summary judgment.   Mr. Steuerwald now appeals the district court's (a) dismissal of his cross-complaint and counterclaim, (b) application of New York law, and (c) grant of summary judgment to WSC on its indemnification claim.

## II

We affirm the district court's dismissal of Mr. Steuerwald's cross-complaint and counterclaim and its grant of summary judgment to WSC.   As explained below, Mr. Steuerwald's arguments in support of reversal are not persuasive.

## A

We review the district court's dismissal of Mr. Steuerwald's cross-complaint and counterclaim under Rule 12(b)(6) *de novo*, applying the same standard as the district court.   *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997) (en banc).   To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible

5

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The pleading standard from Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "a naked assertion . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Under the plausibility standard, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" fail to state a claim. *Iqbal*, 556 U.S. at 678.

In this case, the district court dismissed Mr. Steuerwald's claims with prejudice and denied his request for leave to amend after concluding that his claims were precluded by waiver, judicial immunity, litigation privilege, and res judicata. On appeal, Mr. Steuerwald asserts he "did his best to appraise the District Court" of his claims, but admits that "the manner in which he did so was not optimal." Appellant's Br. at 44. As opposed to defending his cross-complaint and counterclaim, Mr. Steuerwald argues that the district court's remedy—a dismissal with prejudice—was a reversible error because the district court did not explicitly find that Mr. Steuerwald acted with willful or contumacious disregard for court rules and that lesser sanctions would be inadequate. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1335 (11th Cir. 2005). "We review the district court's refusal to grant [Mr. Steuerwald] leave to amend for abuse of discretion,

6

although we exercise *de novo* review as to the underlying legal conclusion that an amendment to the complaint would be futile." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1336 (11th Cir. 2010) (citing *Harris v. Ivax Corp.*, 82 F.3d 799, 802 (11th Cir. 1999)).  Discretion means that the district court may act within a "range of choice," and we will not disturb its decision as long as it "stays within that range and is not influenced by any mistake of law." *Betty K Agencies*, 432 F.3d at 1337.

"[J]ustice does not require district courts to waste their time on hopeless cases." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).  In response to the cross-defendants' motions to dismiss and on appeal, Mr. Steuerwald did not argue that his claims are viable or that his cross-complaint could be cured by an amendment.  Therefore, we affirm the district court's conclusion that Mr. Steuerwald's claims were futile and determine whether the district court abused its discretion by dismissing Mr. Steuerwald's cross-complaint with prejudice.

Mr. Steuerwald asserts that our opinion in *Betty K Agencies*, 432 F.3d at 1337–38 required the district court to find (1) that "[he] engage[d] in a clear pattern of delay or willful contempt" and (2) "that lesser sanctions would not suffice" before dismissing his cross-complaint with prejudice.  We disagree.  In

7

*Betty K Agencies*, we analyzed a district court's *sua sponte* dismissal of a complaint with prejudice *as a sanction* for the plaintiff's failure to answer a counterclaim. *See id.* In this case, the district court did not sanction Mr. Steuerwald—it dismissed his cross-complaint and counterclaim with prejudice after concluding that Mr. Steuerwald's claims were waived, previously adjudicated, and barred by immunity and privilege. Mr. Steuerwald does not explain how amendment would overcome these issues.

In this circuit, a district court need not allow a party to amend his complaint "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) *where amendment would be futile.*" *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014) (quoting *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001)) (emphasis added). We have regularly affirmed similar dismissals with prejudice and dismissals without granting leave to amend because the plaintiff's claims were futile. *See, e.g.*, *SFM Holdings, Ltd.,* 600 F.3d at 1340 (affirming a with-prejudice dismissal); *Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005) (denying motion to amend because the defendants were entitled to judicial immunity). *See also Almanza v. United Airlines, Inc*., 851 F.3d 1060, 1075 (11th Cir. 2017).

8

We keep in mind that pleadings from pro se litigants must be "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). And where a more carefully drafted complaint may state a claim, a district court should generally grant at least one chance to amend a complaint before dismissing it with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Again, however, Mr. Steuerwald has not even attempted to show that amendment would make his claims viable.

Based its determination that Mr. Steuerwald's claims were would fail as a matter of law—which Mr. Steuerwald does not challenge—the district court did not abuse its discretion by dismissing Mr. Steuerwald's claims with prejudice.

**B**

We review the district court's grant of summary judgment to WSC on its indemnification claims *de novo*, reviewing all evidence in the light most favorable to Mr. Steuerwald, the non-moving party. *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 94 (1994); *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999); Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the

9

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc*., 882 F.3d 1358, 1362 (11th Cir. 2018) (internal quotation marks omitted).

**1**

The district court's order granting summary judgment to WSC in part turned on a choice-of-law issue.  In a diversity action, a federal court applies the choice-of-law rules of its forum state.  *See LaFarge Corp. v. Travelers Indem. Co*., 118 F.3d 1511, 1515 (11th Cir. 1997).  We believe that the district court, sitting in diversity, properly applied Florida's choice-of-law rules to conclude that New York law controlled WSC's indemnification claims.

We review the district of court's application of New York law *de novo, see Am. Family Life Assurance Co. v. U.S. Fire Co.,* 885 F.2d 826, 830 (11th Cir. 1989), but we accept any factual findings the district court made in resolving the choice-of-law issue unless clearly erroneous.  *See Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1230 n.4 (11th Cir. 1995).

Under Florida law, an insurance contract is governed by the doctrine of *lex loci contractus* in the absence of a contractual provision specifying the governing law.  *See id.* at 1235.  Here, the surety agreement contained the following choice-

of-law provision: "[A]t [WSC]'s discretion, this indemnity agreement shall be governed in all respects by the laws of South Dakota."  D.E. 1-4 at 1, ¶ 9.  The district court twice concluded that the clause "[A]t [WSC]'s discretion" rendered the choice-of-law provision discretionary, and WSC could elect whether to apply South Dakota law or Florida's default choice-of-law rules.  WSC elected not to exercise the choice-of-law provision and argued that the doctrine of *lex loci contractus* required application of New York Law.

Mr. Steuerwald initially argues that such a discretionary choice-of-law provision is unconscionable and that the district court erred by not severing the provision, removing the limiting statement "[A]t [WSC's] discretion," and applying apply South Dakota law.  These arguments are unpersuasive.

At the outset, the unconscionability of the choice-of-law provision is not at issue because the district court never enforced the provision.  Instead, the district court applied Florida's choice-of-law rules as if the provision did not exist.  That is essentially the result Mr. Steuerwald is arguing for by seeking to invalidate the discretionary choice-of-law clause.

Even if the provision's enforceability were still at issue, Mr. Steuerwald cites no Florida authority showing that a discretionary choice-of-law provision is per se unconscionable and/or invalid.  *See LaFarge*, 118 F.3d at 1515.  Assuming

11

for the sake of argument that the choice-of-law provision's discretionary language rendered it unconscionable, that would presumably invalidate the entire provision and not just the language stating that the provision applies at WSC discretion. *See Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998). And that would mean that the district court would have to resort to default choice-of-law rules. In our view, the district court properly applied *lex loci contractus* to determine what law governed the surety agreement.

"Under the doctrine of *lex loci contractus* . . . the law of the jurisdiction where the contract was executed should control." *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). *See also State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). "The determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract was done.'" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir. 2004) (quoting *Pastor v. Union Cent. Life Ins. Co.*, 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002)). *Lex loci contractus* is, in general, an inflexible, bright-line rule that exists to ensure stability in contract arrangements. *See Rando v. Gov't Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009) (quoting *Roach*, 945 So. 2d at 1164). Therefore, our controlling inquiry is where the surety agreement was executed—i.e., where the act that formed the agreement occurred. *See Prime*, 363 F.3d at 1093.

12

In *Fioretti*, 53 F.3d at 1236, an insurance company expressly conditioned its approval of the insured's application on the execution of the statement of good health. Applying *lex loci contractus*, we concluded that the insured signing a statement of good health constituted the "last act" necessary to complete a life insurance policy and applied the law of the state where he signed the statement of good health. *Id.* at 1232 n.14, 1236. Relying on our opinion in *Fioretti*, we performed a similar choice-of-law analysis in *American United Life Insurance Company v. Martinez*, 480 F.3d 1043, 1059–61 (11th Cir. 2007), where the insured completed an insurance application in Ohio that was later amended in West Virginia. In *Martinez*, we applied Ohio law because "[w]hen the contract deals with an insurance policy, the *locus contractus* is generally the state where the insured executed the insurance application." *Id.* at 1059–60 (citing *Fioretti*, 53 F.3d at 1236, and *Shaps*, 244 F.3d at 881).

In this case, the district court applied New York law because (a) Mr. Steuerwald executed the surety application—and agreed to the indemnification terms therein—in New York, and (b) Mr. Steuerwald performed the probate services insured by the surety bond in New York. On appeal, Mr. Steuerwald asserts that the last act necessary to create the surety agreement in fact occurred in South Dakota because that is where WSC received Mr. Steuerwald's application, approved it, and issued the surety bond. We disagree. In our view, the district

13

court's application of New York law is consistent with our opinions determining where an insurance contract is "executed" and Florida state court opinions applying *lex loci contractus*. *See Martinez*, 480 F.3d at 1059–60; *Fioretti*, 53 F.3d at 1236. *See also Sturiano*, 523 So. 2d at 1128 (explaining that, in interpreting a car insurance agreement, "the law of the jurisdiction where the contract was executed should control"); *Bloch v. Berkshire Ins. Co.*, 585 So. 2d 1137, 1137 (Fla. 3d DCA 1991) (applying New York law to an insurance policy because the insured resided and was covered in New York). Thus, the surety agreement was "executed" when Mr. Steuerwald signed the surety application in New York.

## 2

Applying New York law, the district court granted summary judgment to WSC on its indemnification claims because the undisputed facts established: (a) Mr. Steuerwald entered into an agreement with WSC to obtain a surety bond (b) the surety agreement allowed WSC to settle claims in good faith and obligated Mr. Steuerwald to indemnify WSC, (c) WSC settled claims against the bond, and (d) WSC now seeks indemnification. The district court then addressed Mr. Steuerwald's alleged defenses and concluded that Mr. Steuerwald failed to raise an

issue of material fact to prevent summary judgment.[1]  On appeal, Mr. Steuerwald points to no reversible error, and we find none.

First, the surety agreement, and its indemnity provision, is valid and controlling under New York law.  *See First Nat. Ins. Co. of Am. V. Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d 44, 57 (N.D.N.Y. 2004) (granting summary judgment because the defendants "fail[ed] to raise any factual question whatsoever concerning their obligation to indemnify the surety under [the surety agreement]"); *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 515–16 (S.D.N.Y. 1997) ("Indemnity agreements such as those [in a surety agreement] are valid and enforceable under New York law.").  WSC's right to indemnification is clearly set forth in the surety agreement and "[t]his is not the exceptional case [involving fraud, duress, or unfair bargaining power] where a commercial contract may be found unconscionable and against public policy." *T.P.K. Const. Corp. v. S. Am. Ins. Co.*, 752 F. Supp. 105, 110 (S.D.N.Y. 1990).

Without authority, Mr. Steuerwald asserts that the surety agreement is void due to the fact that he is both the obligor of the surety bond (due to the

---

[1] On appeal, Mr. Steuerwald baldly claims that the District Court "most likely did not consider" and "refused to consider" his affirmative defenses.  Appellant's Br. at 20, 23.  Not only did the district court note the arguments Mr. Steuerwald made in opposition to summary judgment in its order, it went on to analyze each argument in separate sections.  *See* D.E. 127 at 11–16.  The district court did not fail to consider Mr. Steuerwald's arguments; it instead found that "[n]one of these arguments are persuasive." *Id.* at 11–12.

15

indemnification agreement) and co-obligee of the bond (as a beneficiary of the estate). Mr. Steuerwald admits that there is "an absence of case law on point" and cites nothing to establish that he cannot enter into an indemnification agreement with the issuer of a surety bond on an estate from which he benefits. *See* Appellant's Br. at 40. "[T]he onus is upon the parties to formulate arguments." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Even on an issue of first impression, a party must do more than merely raise the issue "in a perfunctory manner, without supporting arguments and citation to authorities." *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). *See also T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1291 (11th Cir. 2015) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research[.]"); *Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (per curiam) (holding unsupported arguments were waived).

The district court cited several cases where surety agreements were found valid and enforceable under New York law. *See Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d at 57; *Merritt-Meridian*, 975 F. Supp. at 516; *Banque Nationale de Paris S.A. Dublin Branch v. Ins. Co. of N. Am.*, 896 F. Supp. 163, 164 (S.D.N.Y. 1995); *T.P.K.*, 752 F. Supp. at 110. Based on these cases, we conclude that Mr. Steuerwald's status as a beneficiary does not render his surety agreement with WSC unenforceable.

16

Mr. Steuerwald also argues that the surety agreement was not conspicuous, contained boilerplate language, and was a contract of adhesion. The fact that the indemnity provision was printed in small font does not render it unenforceable. *See Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 351 (S.D.N.Y. 2014); *Matter of Conifer Realty LLC (EnviroTech Servs., Inc.)*, 106 A.D.3d 1251, 1253–55 (N.Y. App. Div. 2013). And the indemnity provision is easily distinguishable from cases where New York courts have invalidated terms due to boilerplate language or adhesion. *See, e.g.*, *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 383–84, 388–89 (E.D.N.Y. 2015). The provisions that Mr. Steuerwald challenges are set forth on the front page of the surety agreement, contain only eleven terms, and are titled "INDEMNITY" in capital letters. *See* D.E. 1-4 at 1. Additionally, he presents no evidence of fraud, coercion, unfair bargaining power, or that he was not free to refuse WSC's terms and obtain the bond elsewhere. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33 (1991); *In re Lyondell Chem. Co.*, 585 B.R. 41, 52–55 (S.D.N.Y. 2018). To the contrary, the surety application notes that Mr. Steuerwald "ha[d] been a longtime commercial and personal customer." D.E. 1-4 at 1. Based on the forgoing, the indemnity provision was enforceable.

Second, the district court did not err in stating that WSC could rely on the probate court's ruling that Mr. Steuerwald failed to faithfully perform his duties as personal representative to satisfy a condition of the surety bond—that "[Mr.]

17

Steuerwald shall perform faithfully all duties as personal representative according to law." Mr. Steuerwald asserts that WSC was obligated to independently investigate his conduct as personal representative but points to nothing in the surety agreement requiring WSC to investigate or dispute the probate court's order before exercising its right to settle claims or pursue indemnification. In the district court and on appeal, Mr. Steuerwald attempts to relitigate the Florida probate court's conclusion that he failed his duties as personal representative. But we are not in a position to review the state probate court's ruling, especially given that a Florida appellate court already affirmed the probate court.

Third, WSC properly exercised its authority to settle the claims against the surety bond. The surety agreement contains a provision allowing WSC to handle or settle any claim against the surety bond in good faith, *see* D.E. 1-4 at 1, ¶ 5, and Mr. Steuerwald argues that WSC did not exercise "good faith" in settling the claims against its bond. Under New York law, good faith "entails acting with a faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Banque Nationale*, 896 F. Supp. at 165 (internal quotation marks omitted). *See also Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d at 52 (describing good faith as "[a]bsent bad faith, fraud or extravagance"); *Merritt-Meridian*, 975 F. Supp. at 516 (finding good faith in "the absence of an indication of fraud or collusion between [the surety company] and the claimants"). Here, Mr.

18

Steuerwald points to no evidence that WSC colluded with the claimants, acted fraudulently, or settled the claims in bad faith.[2]

## III

Based on the foregoing, we affirm the district court's dismissal of Mr. Steuerwald's cross-complaint and grant of summary judgment to WSC.

**AFFIRMED.**

---

[2] Some New York cases suggest that that Mr. Steuerwald's failure to post collateral, as required by the terms of the surety contract, defeats any argument that WSC did not exercise good faith in settling the claims against the bond. *See, e.g.*, *Ebasco Constructors, Inc. v. A.M.S. Const. Co.*, 195 A.D.2d 439, 440 (N.Y. App. Div. 1993). Because we conclude that Mr. Steuerwald did not present evidence that WSC's settlement lacked good faith, we need not address this issue.

19